**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIPHERBLADE, LLC, a Pennsylvania Limited Liability Corporation, and CIPHERBLADE, LTD, a United Kingdom limited company | **CASE NO.** |
| PLAINTIFFS, | |
| v. | |
| CIPHERBLADE, LLC, an Alaska Limited Liability Corporation, MANUEL KRIZ, MICHAEL KRAUSE, JORN HENRIK BERNHARD JANSSEN, SERGIO GARCIA, JUSTIN MAILE, IOANA VIDRASAN, | **JURY TRIAL DEMANDED** |
| and | |
| CIPHERBLADE APAC PTE LTD, a Singapore limited company, JUSSI AITTOLA, | |
| and | |
| OMEGA3ZONE GLOBAL LTD, a Cyprus limited company, PAUL MARNITZ, | |
| and | |
| INQUISITA SOLUTIONS LTD., a Cyprus limited company | |
| and | |
| GREEN STONE BUSINESS ADVISORY FZ LLC, a United Arab Emirates Limited Liability Corporation. | |
| DEFENDANTS. | |

## COMPLAINT

1.     Plaintiff CipherBlade , by and through its attorneys, Crowell & Moring LLP, for their Complaint against Defendants CipherBlade LLC, an Alaska Limited Liability Corporation; Manuel Kriz; Michael Krause; Jorn Henrik Bernhard Janssen; Sergio Garcia;

1

Justin Maile; Ioana Vidrasan; CipherBlade APAC PTE LTD, a Singapore limited company; Jussi Aittola; and Omega3Zone Global LTD, a Cyprus limited company; Inquisita Solutions Ltd. a Cyprus limited company, and Green Stone Business Advisory, a Dubai company, hereby allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, (ii) unfair competition under the Lanham Act (15 U.S.C. §§ 1114 & 1125), and (iii) related state law claims for unfair competition, conversion, and conversion of chattels.

2.     Plaintiffs seek injunctive and other equitable relief and damages against Defendants who wrongfully operate and control Plaintiff CipherBlade's IT infrastructure and converted corporate assets including customer and business trade secrets and confidential information, and pass off CipherBlade's services for their own. Defendants, through their illegal activities involving misuse of CipherBlade assets, infrastructure, and resources, have caused and continue to cause irreparable injury to Plaintiffs, their customers, and the public.

## PARTIES

3.     Plaintiff CipherBlade, Ltd. is a corporation organized under the laws of the United Kingdon and is located at 52 Grosvenor Gardens, Nwms Office 514 5th Floor, Belgravia, London, England, United Kingdom and is majority owned by Richard Sanders, who is a natural person domiciled in Pennsylvania.

4.     Plaintiff CipherBlade LLC, while incorporated in Pennsylvania, has a Certified Investigative Partnership with Chainalysis, which operates in New York City, New York, and is also owned by Richard Sanders.

5.      Defendant CipherBlade LLC is, on information and belief, an Alaska limited liability corporation with offices at 310 K Street, Suite 200, Anchorage, AK 99501 and which is owned and/or controlled by Defendant Justin Maile.

6.      Defendant CipherBlade APAC PTE LTD is, on information and belief, a Singapore limited company with offices at 30 Cecil Street, #19-08 Prudential Tower, Singapore 049712and which is owned and/or controlled by Defendant Jussi Aittola.

7.      Defendant Omega3Zone Global LTD is, on information and belief, a Cyprus limited company with offices at 9 Stelmio Building, Flat/Office 301, 8020, Paphos, Cyprus, Greeceand which is owned and/or controlled by Defendant Paul Marnitz.

8.      Defendant Manuel Kriz is a natural person domiciled, on information and belief, in Cyprus at 9, Stelmio Building, Floor 3, Flat/Office 301, 8020, Paphos, Cyprus, Greece.

9.      Defendant Michael Krause is a natural person domiciled, on information and belief, in Cyprus.

10.     Defendant Jorn Henrik Bernhard Janssen is a natural person domiciled, on information and belief, in Cyprus at 9, Stelmio Building, Floor 3, Flat/Office 301, 8020, Paphos, Cyprus, Greece.

11.     Defendant Ioana Vidrasan is a natural person domiciled, on information and belief, in Cyprus at 9, Stelmio Building, Floor 3, Flat/Office 301, 8020, Paphos, Cyprus, Greece.

12.     Defendant Jussi Aittola is a natural person domiciled, on information and belief, in Singapore.

13.     Defendant Justin Maile is a natural person domiciled, on information and belief, in Alaska at 655 W 22nd Ave, Anchorage, AK 99503.

14.     Defendant Paul Marnitz is a natural person domiciled, on information and

belief, in Cyprus at 9, Stelmio Building, Floor 3, Flat/Office 301, 8020, Paphos, Cyprus, Greece.

15.     Defendant Sergio Garcia is a natural person domiciled, on information and belief, in Belgium.

16.     Defendant Inquisita Solutions Ltd. is, on information and belief, a Cyprus limited company with offices at 9, Stelmio Building, Floor 1, Flat/Office 102, 8020, Paphos, Cyprus, Greece.

17.     Defendant Green Stone Business Advisory FZ LLC is, on information and belief, a Dubai limited company with offices at A4-712, Building no. A4, Al Hamra Industrial Zone-FZ, Ras Al Khaimah, United Arab Emirates.

## JURISDICTION AND VENUE

18.     This Court additionally has subject matter jurisdiction over this case pursuant to the Defend Trade Secrets Act (18 U.S.C. § 1836) and the Lanham Act (15 U.S.C. § 1114 & 1125). The Court also has supplemental jurisdiction for the New York State law claims pursuant to 28 U.S.C. § 1367.

19.     This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because, upon information and belief, all of the Defendants are citizens of jurisdictions other than the states where Plaintiffs are citizens and the amount in controversy exceeds $75,000.

20.     The venue in this action is proper within the Southern District of New York pursuant to 28 U.S.C. § 1391(b), in that (i) CipherBlade's partner and customers for CipherBlade's services are based in New York; (ii) the claims asserted by Plaintiffs arose within this judicial district, and (iii) there is no district better suited in which this action may otherwise be brought.

21.     Defendants are subject to personal jurisdiction in the State of New York and

venue in this Court because through tortious conduct in this District they caused injury to CipherBlade's important business partnerships and customer relations with entities based in this District.

22.     New York is a critical market for the cryptocurrency investigative and recovery services that CipherBlade provides. Indeed, CipherBlade provides cryptocurrency investigative and recovery services and expert testifying services to institutions and individuals based in the Southern District of New York, including as examples investigative work for a victim in connection with *SEC v. Elmaani*, 20 Civ. 10374, a case in this District, and investigative and testifying work in connection with *LCX AG v. Doe and $1.274 M U.S. Dollar Coin*, Index 154644-2022 in the New York Supreme Court in New York County. Indeed, CipherBlade's work in the last three years has included four engagements to acting as an expert in a lawsuit involving cryptocurrency pending in the federal or state courts in New York County and numerous other engagements that did not result in or involve an action in court.

23.     CipherBlade's relationship with law firms based in this District representing clients involving cryptocurrency losses is a critical source of CipherBlade's business. CipherBlade is also retained to provide insight in connection with government cryptocurrency enforcement matters that take place in this District. In this capacity, CipherBlade interacts with prosecutors and regulators in this District concerning cryptocurrency investigations on behalf of clients, including a cryptocurrency exchange.

24.     CipherBlade most important business partner and relationship is with Chainalysis, which is based in this District, and with which CipherBlade works in connection with investigations in this District and elsewhere. CipherBlade also licenses the Chainalysis blockchain analysis software and platform to do this work and would be unable to continue in business without

maintaining this key relationship. Indeed, the Chainalysis blockchain analysis software and platform is the single tool, without which, CipherBlade cannot operate. This relationship has been severely compromised as part of this scheme, and Defendants are actively seeking to lock out true CipherBlade of their Chainalysis accounts and all historical data associated with the CipherBlade's ongoing investigations, which has would cripple CipherBlade's operations and destroy CipherBlade's reputation.

25.     Accordingly, the wrongful acts of Defendants have caused irreparable harm to Plaintiffs and their crucial client and partner relationships in this District, including by Defendants wrongly passing themselves off as CipherBlade and accessing and using the Chainalysis software platform and the confidential information and trade secrets concerning Chainalyisis and CipherBlade clients to falsely conduct business as CipherBlade.

## FACTUAL BACKGROUND

26.     CipherBlade LLC is a blockchain investigation company that investigates cryptocurrency-related matters, often involving cybercrime, and tracks Bitcoin and other cryptocurrency assets in many instances as well. CipherBlade has investigated, tracked and provided consulting services on cases leading to the recovery of over $50 million in the last four years and the location or tracking of cryptocurrencies or other assets obtained through cryptocurrency transactions valued in the billions of dollars. Richard Sanders co-founded the company originally in the United Kingdom as CipherBlade Ltd. The company later transitioned its primary location to the state of Pennsylvania where it was incorporated as CipherBlade, LLC. The U.K. entity, which Mr. Sanders has majority interest, maintained the CipherBlade trademark.

27.     In late 2022, Mr. Sanders sought to take a step back from the day-to-day operations of CipherBlade to volunteer in Ukraine to assist the Ukrainian National Police with investigations involving cryptocurrency. To do so, he required assistance managing the administrative, business management, and accounting tasks he typically oversaw.

28.     Mr. Sanders entrusted Defendants Manuel Kriz and Michael Krause to assist with these tasks for the few months Mr. Sanders was in Ukraine beginning in February 2023.

29.     Defendant Kriz was initially hired around May or June 2019. He was responsible for assisting with administrative and business tasks. When Mr. Kriz onboarded, his initial role was to work as an investigator and handle back-office items such as invoices, leads/general email responsiveness, engagement agreements and other contractual items (generation thereof – not signing), client calls, etc. He was not to be responsible for finance and did not have authority to sign anything on Mr. Sanders' behalf, make critical decisions, or had ownership of CipherBlade in any form. Over time, Mr. Kriz needed assistance with his responsibilities and recommended hiring Defendant Krause.

30.     With time, Mr. Krause was granted additional duties, such as handling routine transactions for which Mr. Sanders would be made aware (e.g., compensating staff, Reactor license payments to Chainalysis, etc.), which limited authority was given at Mr. Krause's request. Mr. Krause at no point owned any portion of CipherBlade and has no equity interest in the company. He is an emplooye who, over time, grew into the position of trusted business colleague and friend to Mr. Sanders.

31.     Both Defendants Kriz and Krause were granted limited administrative access and authority to manage CipherBlade PA's IT infrastructure. Defendants were authorized to employ others as needed. Defendant Kriz hired Defendant Krause's two sons, Defendants Jorn Henrik

Bernhard Janssen and Paul Marnitz. Defendants Kriz and Krause also subsequently hired Defendants Maile, Aittola, and Vidrasan. All Defendants were or should have been employees of CipherBlade. However, it turned out that Defendant Maile was not technically employed by CipherBlade. Rather, Defendant Maile created his own company, mimicking the name "CipherBlade LLC," and incorporated it in Alaska. Similarly, Defendant Aittola created his own limited company in Singapore, CipherBlade APAC Pte Ltd. Both CipherBlade Alaska and CipherBlade APAC Pte Ltd. are "fake CipherBlade" operations using stolen corporate assets to pass themselves off as CipherBlade.

32.     On June 16, 2023, Mr. Sanders transitioned the role of CEO to Paul Sibenik.

## The Scheme to Steal the Business

33.     Defendants represented to Mr. Sanders that separate entities may be necessary to facilitate business opportunities and segregate business lines. Defendants then falsely represented to Mr. Sanders that separate CipherBlade entities would be set up in  Alaska and Singapore and each would be: (i) affiliated with CipherBlade, and (ii) registered as owned by Mr. Sanders. They were not. The Alaska entity was and is, on information and belief, wholly owned by Defendant Maile, and the Singapore entity is, on information and belief, wholly owned by Defendant Aittola.

34.     It was well known among CipherBlade staff that Mr. Sanders intended to volunteer his time and services to assist the people in Ukraine for at least a few months in early 2023. Almost immediately after Mr. Sanders departed for Ukraine, Defendants engaged in a series of activities that were unauthorized and far exceeded the parameters of the authorized scope of their work and permissions. These acts involved fraudulent misrepresentations and conduct by which Defendants conspired to  convert CipherBlade assets – including its trademark, corporate trade secrets and confidential information, employees, and business contracts –  and to transfer these assets to their

control including the control by enterprises operated by Defendants infringing on CipherBlade's trademark, all  without Mr. Sanders' authorization.

35.     For instance, within two weeks of Mr. Sanders' departure, Defendant Kriz transferred the CipherBlade Ltd. trademark to another entity (omega3zone Global Ltd.), owned by Defendant Marnitz, who  is the son of Defendant Michael Krause. Defendant Kriz fraudulently signed the transfer as a purported authorized signatory. However, Defendant Kriz never had such signing authority for CipherBlade Ltd. in the U.K. that would permit him to lawfully transfer a CipherBlade corporate asset to another entity. Indeed, Defendant Kriz had never been a part of CipherBlade Ltd. in the U.K. In connection with this fraudulent transfer, Defendants have been using CipherBlade's trademark to pass themselves off as CipherBlade and to, on information and belief, mislead customers and vendors into signing agreements with CipherBlade Alaska and CipherBlade Singapore.

36.     Defendants also began using an email address to contact customers and conduct business purportedly on behalf of Mr. Sanders, but without Mr. Sanders' knowledge or authorization. Defendants used this email account to communicate purportedly on behalf of CipherBlade as Mr. Sanders himself.  These emails even went so far as to include a *picture* of Mr. Sanders in the signature line:



37.     While Mr. Sanders was aware of the "richard@cipherblade.com" email address, its limited use was not for the purpose that Defendants subsequently abused it for -- to communicate with various stakeholders as though it were Mr. Sanders himself corresponding.

38.     On June 16, 2023, Mr. Sibenik, the CipherBlade CEO became aware that there was a 'hostile takeover' of CipherBlade. He found that Defendants had discreetly been orchestrating considerable changes in the weeks and months prior. In this time period, for example, they perpetuated the false narrative that Mr. Sanders approved of business contracts being transferred from CipherBlade to the Alaska Entity, which he did, under the impression that he owned it, which he did not.

39.     Defendants also actively attempted to convert numerous current CipherBlade clientele over to the Alaska Entity. Because the CipherBlade employees not part of Defendants conspiracy do not have visibility into client emails, as Defendants have locked them out of email access, it is currently impossible to know the amount of harm done.

40.     Defendants also converted CipherBlade corporate assets by making payments with corporate assets to themselves masking the payments as vendor payments to entities controlled by Defendants.  Defendants transferred CipherBlade funds in a series of transactions captured as

"Management Services" and "Consulting." These payments were made from CipherBlade's Wise business account to a shell company called Inquisita Solutions Ltd. in multiple instances across the month of April 2023 and just days before Mr. Kriz was fired from CipherBlade. According to Inquisita Solutions Ltd.'s records, the entity's Director and Secretary is listed as Defendants Kriz and Janssen. Defendants also have asserted control, without authority, over some of CipherBlade's cryptocurrency assets.

41.    Defendants actively engaged in a series of unauthorized and unlawful activities that sought to undermine the control and ownership of CipherBlade. Defendants also perpetuated their efforts by abusing the access Mr. Sanders granted them to his home while he was away in Ukraine., including the theft from his home of CipherBlade corporate documents. While abroad in Ukraine, Mr. Sanders received a series of messages from his home security system of system alerts that indicated camera surveillance was down. Upon his return home, he observed that business registration related documents, including LLC and business filings as well as company trademark paperwork were missing. Furthermore, he came across a U.S. Postal Service receipt for a package purportedly mailed by U.S. Mail from his home, fraudulently using his name, and credit card information without permission, sent to an address in Cyprus. On further inspection of the receipt, the package was addressed to Defendant Paul Marnitz in Cyprus.

## CipherBlade's IT Infrastructure

42.    Defendants also took control of various CipherBlade-controlled IT infrastructure, made various unauthorized administrative changes, and abused various administrative permissions. Defendants also locked out and/or heavily restricted employees, who had raised questions and sought justification from Defendants for their activities, from critical company

infrastructure. Most notably, Defendants took control of the CipherBlade domain (https://cipherblade.com) which is registered with Namecheap as the registrar, as well as the hosting infrastructure with Google and Google Workspaces, which grants employees email access. In this manner, Defendants by fraud obtained administrative access and control over this CipherBlade IT infrastructure, through which Defendants have gained access for themselves and revoked access to CipherBlade IT infrastructure for Mr. Sanders and the CipherBlade employees not part of Defendants' conspiracy.

43.     Furthermore, the registrant for cipherblade.com was changed from Richard Sanders with the email address rich@cipherblade.com to Defendant Mr. Maile with the email billing@cipherblade.com on June 13, 2023. Therefore, CipherBlade has been locked out of and no longer has access to such important business generation and customer contact information and communication with customers at this time.

44.     In addition, Defendants converted Plaintiff's cloud assets and computer network, and all the confidential and trade secret business and customer information on these computer systems, with the intent to steal clients and funds.

## COUNT I
## (MISAPPROPRIATION OF TRADE SECRETS, DEFEND TRADE SECRETS ACT)

45.     Plaintiffs repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

46.     Plaintiffs are the owner of the Trade Secrets and Confidential Information, which includes proprietary investigative techniques and processes and confidential business information and trade secrets concerning the ongoing relationship with Chainalysis, and specific clients and matters as well as new prospective clients and matters. The Trade Secrets and Confidential Information are intended for use in interstate and/or foreign commerce,

including in the execution of business contracts for conducting blockchain investigations and tracking of Bitcoin and other cryptocurrencies in cybercrime cases.

47.   The Trade Secrets and Confidential Information derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

48.   Plaintiff takes reasonable measures under the circumstances to keep its Trade Secrets and Confidential Information confidential.

49.   Defendants misappropriated Plaintiffs' Trade Secrets and Confidential Information by wrongfully obtaining through fraudulent and other unlawful acts and/or using Plaintiff's Trade Secrets and Confidential Information wrongfully obtained.

50.   Plaintiffs have identified repeated instances of misappropriation by Defendants, including those described above.

51.   Defendants know or should know that Plaintiffs' Trade Secrets and Confidential Information were acquired by improper means.

52.   Defendants have improperly disclosed and/or used Plaintiffs' Trade Secrets and Confidential Information after improperly acquiring them, including to compete with CipherBlade.

53.   Defendants have caused and continue to cause Plaintiff damages and irreparable injury.

54.   Plaintiffs are entitled to a monetary award under 18 U.S.C. § 1836, including damages to Plaintiffs and any diminution in the value of its Trade Secrets and Confidential Information, and unjust enrichment of Defendants arising from Defendants' misappropriation.

55.   Defendants' misappropriation is reckless, willful, and malicious and thereby

entitles Plaintiffs to an award of exemplary damages, as well as attorneys' fees.

56.    Defendants' misappropriation of Plaintiffs' Trade Secrets and Confidential Information has caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants from misappropriating, using, or disclosing Plaintiffs' Trade Secrets and Confidential Information in any manner, and ordering that Defendants permanently destroy any of Plaintiffs' Trade Secrets and Confidential Information in their possession, custody, or control, including any materials that were in any way derived from Plaintiffs' Trade Secrets and Confidential Information, is necessary to provide Plaintiffs with complete relief.

## COUNT II
## (CONVERSION)

57.    Plaintiffs repeat and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

58.    Defendants knew or should have known that taking the Trade Secrets and Confidential Information was prohibited and unlawful.

59.    At all relevant times, Plaintiffs owned the Trade Secrets and Confidential Information contained in writing.

60.    Defendants have willfully taken and exercised unlawful and unauthorized dominion and control over the Trade Secrets and Confidential Information, including for their personal use and/or through disclosure to third parties.

61.    Defendants converted and/or will continue to convert the Trade Secrets and Confidential Information for their own use and financial gain and without authorization or consent from Plaintiffs.

62.    As a direct and proximate cause of Defendants' conversion of the Trade Secrets

and Confidential Information, Plaintiffs have incurred and continues to incur damages and irreparable injury, including without limitation, lost value and potential profits it would have earned but for Defendants' unlawful actions.

63.    Plaintiffs are entitled to recover compensatory and punitive damages from Defendants in an amount to be determined at trial.

64.    Defendants' conversion of the Trade Secrets and Confidential Information has caused and will continue to cause Plaintiff irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants from using, disclosing, or relying on the Trade Secrets and Confidential Information in any manner, and ordering that Defendant permanently destroy any of the Trade Secrets and Confidential Information in his possession, custody, or control, including any materials that were in any way derived from the Trade Secrets and Confidential Information, is necessary to provide Plaintiff with complete relief.

## <u>COUNT III</u>
## (UNFAIR COMPETITION, 15 U.S.C. § 1125(a))

65.    Plaintiffs repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

66.    Defendants have taken over CipherBlade, and made false and misleading statements in an attempt to steal customers and business opportunities from CipherBlade. Defendants have caused these statements to enter into interstate commerce.

67.    Defendants' statements are false and misleading at least in light of being a false CipherBlade entity.

68.    Defendants made these false and misleading statements knowing they were false and misleading and in bad faith.

69.    Defendants' statements are likely to confuse or deceive a substantial segment of its audience, and this deception is material, in that it is likely to influence the purchasing decision.

70.    Defendants' false and misleading statements constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.    Defendants' false and misleading statements have a tendency to harm, have harmed, and will continue to harm Plaintiff and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

72.    Plaintiffs have been and are likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the goodwill associated with its products. Plaintiffs are and have been irreparably damaged in its business or property by Defendants' false and misleading statements, and unless Defendants' false and misleading statements are enjoined by this Court, Plaintiffs will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## COUNT IV

## (LANHAM ACT, 15 U.S.C. § 1114(1))

73.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

74.    Defendants have taken over the CipherBlade trademark in an attempt to steal customers and business opportunities from CipherBlade. Defendants have used this trademark in interstate commerce.

75.     Defendants' are using this trademark to garner the goodwill of CipherBlade and represent to customers that they are the "real" CipherBlade entity.

76.     Defendants did this despite knowing these actions were false and misleading and in bad faith.

77.     Defendants' statements are likely to confuse or deceive a substantial segment of its audience, and this deception is material, in that it is likely to influence the purchasing decision.

78.     Defendants' false and misleading statements constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1114.

79.     Defendants' false and misleading statements have a tendency to harm, have harmed, and will continue to harm Plaintiffs and its business relationships, the conduct of its business, and its ability to enter into sales and business relationships.

80.     Plaintiffs have been and are likely to be injured as a result of the false and misleading statements, either by direct diversion of sales or by a lessening of the goodwill associated with its products. Plaintiffs are and have been irreparably damaged in their business or property by Defendants' false and misleading statements, and unless Defendants' false and misleading statements are enjoined by this Court, Plaintiffs will continue to suffer monetary damage, market price erosion, loss of market share, lost sales, and irreparable harm to its reputation, relationships, and goodwill with its customers, vendors, distributors, industry professionals, and others.

## COUNT V

## (TRESPASS TO CHATTEL)

81.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

82. Defendants have used a computer and/or computer network, without authority, with the intent to cause injury to the property of another.

83. Defendants have, without authority, used a computer and/or computer network, without authority, with the intent to trespass on the computers and computer networks of Plaintiffs.

84. Defendants' actions in operating "fake CipherBlade" result in unauthorized access to CipherBlade's accounts on which its programs and algorithms exists, and result in unauthorized intrusion into those computers and theft of information, account credentials, and funds.

85. Defendants' actions have caused injury to Plaintiffs and have interfered with the possessory interests of Plaintiffs over its software.

86. Plaintiffs seek injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

87. As a direct result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## COUNT VI

## (UNJUST ENRICHMENT)

88. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

89. The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at the expense of Plaintiffs in violation of the common law. Defendants used, without authorization or license, software belonging to Plaintiffs to facilitate unlawful conduct inuring to the benefit of Defendants.

90. Defendants profited unjustly from their unauthorized and unlicensed use of

Plaintiffs intellectual property.

91.     Upon information and belief, Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of Plaintiffs' intellectual property.

92.     Retention by the Defendants of the profits they derived from their malfeasance would be inequitable.

93.     Plaintiffs seek injunctive relief and compensatory and punitive damages in an amount to be proven at trial, including without limitation disgorgement of Defendants' ill-gotten profits.

94.     As a direct result of Defendants' actions, Plaintiffs suffered and continue to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 35, Plaintiffs demand trial by jury as to all issues that may be tried by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants and each of them, jointly and severally, as follows:

a)      Awarding Plaintiffs an injunction against Defendants;

b)      Awarding Plaintiffs actual damages for past lost wages and benefits and future lost wages and benefits, in an amount to be determined at trial, but that would be in excess of $75,000

c)      Awarding Plaintiffs increased, exemplary and/or treble damages for Defendants intentional tortious conduct;

d)      Awarding Plaintiffs the costs of this action together with reasonable attorney's fees;

e)      Awarding Plaintiffs pre- and post-judgment interest in the statutory amount;

f)      Return of domain cipherblade.com to true CipherBlade;

g)      Release and return of all IT infrastructure and operations platform (including GSuite) back to CipherBlade;

h)      Cease onboarding and transferring clients to Defendants, including Alaska and Singapore CipherBlade;

i)      Prevent Defendants from creating similar CipherBlade organizations in the future in other jurisdictions or using the CipherBlade mark or any mark that is confusingly similar;

j)      Return of all clients, assets, trade secrets and other confidential information, corporate and business records and monies taken during the takeover of CipherBlade;

k)      Return the CipherBlade mark to CipherBlade Ltd. and declare its assignment to Defendant Omega3zone Global, and any other assignments or licenses granted by Defendants to be  fraudulent, null and void.

l)      Such other and further relief as the Court deems equitable, just and proper.


Dated: June 30, 2023                    Respectfully submitted,

                                          *s/Anne Li*
                                        Alexander Joseph Urbelis
                                        Anne Li
                                        James Stronski
                                        CROWELL & MORING LLP
                                        590 Madison Avenue, 20th Floor
                                        New York, NY 10022
                                        Telephone: (212) 223-4000
                                        Fax: (212) 223-4134

                                        Garylene Javier (*pro hac vice pending*)
                                        CROWELL & MORING LLP
                                        1001 Pennsylvania Avenue NW
                                        Washington DC 20004-2595
                                        Telephone:  (202) 624-2500
                                        Fax:        (202) 628-5116
                                        gjavier@crowell.com


                                        *Attorneys for CipherBlade, LLC.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIPHERBLADE, LLC, a Pennsylvania Limited Liability Corporation, and CIPHERBLADE, LTD, a United Kingdom limited company | **CASE NO.** |
| PLAINTIFFS, | |
| v. | |
| CIPHERBLADE, LLC, an Alaska Limited Liability Corporation, MANUEL KRIZ, MICHAEL KRAUSE, JORN HENRIK BERNHARD JANSSEN, SERGIO GARCIA, JUSTIN MAILE, IOANA VIDRASAN, | **JURY TRIAL DEMANDED** |
| and | |
| CIPHERBLADE APAC PTE LTD, a Singapore limited company, JUSSI AITTOLA, | |
| and | |
| OMEGA3ZONE GLOBAL LTD, a Cyprus limited company, PAUL MARNITZ, | |
| and | |
| INQUISITA SOLUTIONS LTD., a Cyprus limited company | |
| and | |
| GREEN STONE BUSINESS ADVISORY FZ LLC, a United Arab Emirates Limited Liability Corporation. | |
| DEFENDANTS. | |

Pursuant to 18 U.S.C. § 1746, I, Paul Sibenik, Chief Executive Officer of CipherBlade, hereby verify that I have read the foregoing Verified Complaint being filed in the matter CIPHERBLADE, LLC ET AL., v. CIPHERBLADE, LLC ALASKA ET AL. and that all of the factual allegations contained in the Verified Complaint are true and accurate to the best of my personal knowledge in Coquitlam, Canada.

Date: June 30, 2023 _____

Paul Sibenik, Chief Executive Officer | CipherBlade, LLC

1