**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CIPHERBLADE, LLC, a Pennsylvania Limited
Liability Corporation

               PLAINTIFF,

v.

CIPHERBLADE, LLC, an Alaska Limited Liability
Corporation, MANUEL KRIZ, MICHAEL
KRAUSE, JORN HENRIK BERNHARD
JANSSEN, SERGIO GARCIA, JUSTIN MAILE,
IOANA VIDRASAN,

and

CIPHERBLADE APAC PTE LTD, a Singapore
limited company, JUSSI AITTOLA,

and

OMEGA3ZONE GLOBAL LTD, a Cyprus limited
company, PAUL MARNITZ,

and

INQUISITA SOLUTIONS LTD., a Cyprus limited
company,

and

GREEN STONE BUSINESS ADVISORY FZ LLC,
a United Arab Emirates Limited Liability
Corporation.

               DEFENDANTS.

**Case No. 1:23-cv-05671-AKH**

**DECLARATION OF PAUL SIBENIK IN SUPPORT OF APPLICATION FOR A
TEMPORARY RESTRAINING ORDER, PRESERVATION ORDER, EXPEDITED
DISCOVERY, AN ALTERNATIVE SERVICE ORDER, AND AN ORDER TO SHOW
CAUSE SCHEDULING A PRELIMINARY INJUNCTION MOTION**

1

I, Paul Sibenik, declare as follows:

1.      I am over eighteen years old.

2.      I am the Chief Executive Officer at CipherBlade, LLC (hereinafter, "CipherBlade PA" or "Plaintiff"), a Limited Liability Corporation incorporated in Pennsylvania.  A true and correct copy of the Pennsylvania Department of State Website showing CipherBlade's incorporation there is attached as **Exhibit 1**.

3.      CipherBlade PA conducts blockchain investigations and provides related expert witness services.

4.      I make this declaration in support of CipherBlade PA's application for injunctive relief. I make this declaration based on my own personal knowledge.

5.      If called as a witness, I could and would testify competently to the truth of the matters set forth herein.

6.      Prior to my current role at CipherBlade PA, I served as the Lead Case Manager and was the most senior full-time investigator at the company.  I have been contracted by CipherBlade LLC since March 1, 2021, prior to which I was contracted by CipherBlade Ltd since September 2019.

7.      My experience includes managing the investigation of cryptocurrency and digital asset-related transactions, including matters that involve cybercrime, such as thefts, fraud, exploits, vulnerabilities, and hacking.

8.      I also have experience conducting cryptocurrency and digital asset-related investigations in various types of civil matters and disputes, ranging from business-related disputes to divorce matters to bankruptcy cases.

9.      I am frequently called upon as an expert in cryptocurrency-related matters and

2

investigations.

10.     Shortly after I started, Richard Sanders, co-founder and Principal of CipherBlade PA, began expanding my work to include overseeing more business and operational tasks and priorities.

11.     Mr. Sanders eventually transitioned me to the role of CEO on June 16, 2023.

12.     A true and correct copy of the current version of my curriculum vitae is attached to this declaration as **Exhibit 2.**

## I.     CIPHERBLADE PA

13.     In late 2022, Mr. Sanders told me he was going step back from the day-to-day operations of CipherBlade PA to volunteer in Ukraine.

14.     He entrusted the Defendants, Mr. Manuel Kriz (alias "Matthew Greene") and Mr. Michael Krause (alias "Michael Kramer") to manage administrative business management and accounting tasks in addition to their previous duties.

15.     In June 2023, I became aware of some irregularities with the CipherBlade PA business operations.

16.     For example, I have noticed that Defendants have deleted previous messages between us and evidence of their scheme.

17.     In addition, I noticed that Mr. Maile created CipherBlade LLC ("the Alaska Entity") and Mr. Aiottla created CipherBlade APAC Pte Ltd ("the Singapore Entity") during Mr. Sanders' absence.

### A.     Defendants Have Taken Over Access to Systems

18.     CipherBlade PA uses Google Workspaces to issue and manage all email addresses associated with the cipherblade.com domain.

3

19.     All email accounts have different administrator rights depending on the privilege level associated with the account in Google Workspaces.

20.     A regular user account has no administrative privileges to manage email addresses in Google Workspaces. An Administrator level account has administrative rights, and allows them to create and delete email addresses of regular uses, but does not allow them to change the role of any Google Workspace Administrator or delete other Administrator email accounts A Super Administrator has all the rights and abilities of an Administrator, however, a Super Administrator also has the ability to promote regular users to Administrator, and demote Administrators to a regular user, and ability to disable or delete any Administrator account.

21.     As things became more suspicious, I took it upon myself to investigate. I learned that prior to Mr. Sanders' departure to Ukraine, he transferred Super Administrator account permissions to a shared email address, hq@cipherblade.com that both Mr. Kriz and Mr. Sanders would have the login credentials to.  I also learned that the CipherBlade Google Workspaces account was purchased through a reseller called 'HiView Solutions.'I uncovered that that on May 4, 2023, four days after Mr. Kriz was supposedly fired, Mr. Kriz set up a Google Meeting with HiView labelled "CipherBlade | HiView Workspace Sync." HiView Solutions is a Google Cloud Premier Partner and reseller of Google Workspaces that CipherBlade used to purchase Google Workspaces. A true and accurate copy of the meeting calendar entry is attached as **Exhibit 3** and an excerpt is below as **Figure A**. In my opinion, the likely purpose of this call was to alter the billing details associated with the Google Workspaces account that CipherBlade PA had been paying for on a monthly basis. The last monthly invoice that CipherBlade PA paid for the Google Workspaces account was on May 2, 2023, per our accounting records. CipherBlade PA did not pay for Google Workspace in early June 2023 presumably because the billing information had

4

been altered by Mr. Kriz.



**Figure A**

22.    Defendants are the only ones who have access at this time to the administrative rights that can grant other users access.  The Defendants used the Super Administrator access that had to indefinitely disable email accounts of CipherBlade PA personnel, including email addresses belonging to Mr. Sanders, Sasha (regular user), and myself (regular user). Our work email addresses are still disabled as of the time of writing as a result of Defendants actions.

**CipherBlade Domain and Webpage Was Taken Over by Defendants.**

23.    The cipherblade.com domain was registered with the U.S.-based domain registrar, Namecheap, Inc. Defendants changed the account ownership information of the Namecheap account that was associated with cipherblade.com from rich@cipherblade.com to billing@cipherblade.com. **Figure B** below, submitted as **Exhibit 4**, is a true and accurate description of the NameCheap.com support email showing the CipherBlade PA domain being transferred from Richard Sanders to Justin Maile.

5



**Figure B**

24.     The most likely way the Defendants were able to effectuate this transfer on June 13th was by temporarily disabling the email address rich@cipherblade.com and then implementing an email forwarding rule for the email address rich@cipherblade.com that would redirect messages sent to this email address to the Defendants. The critically important email message that the Defendants would have needed to intercept was an Email 2FA code sent to this email address from Namecheap in order to access the Namecheap account. This allowed the Defendants to steal the cipherblade.com domain from Mr. Sanders.

25.     The June 13th transfer date of the domain matches security logs from Mr. Sanders' email address showing that his email account was disabled and subsequently restored on June 13th as shown in the **Figure C** below.

6



**Figure C**

26.      On July 3, 2023, Defendants utilized the billing@cipherblade.com email address to transfer the domain from Namecheap, a U.S.-based registrar, to OVH SAS, a domain name registrar located in France.

27.      I searched for the ownership of the CipherBlade.com domain name using Whois – a service that tracks such information.  The Whois data from the domain name system shows the exact date and time that Defendants updated and transferred the domain. **Figure D** below, submitted as **Exhibit 5**, is a true and accurate copy of the Whois data showing that the domain name system was transferred on July 3, 2023.

7

**Figure D**

28.     Also, on July 3, 2023, the Defendants transferred the ownership information of the domain to "omega3zone Global Ltd." and changed the registrant country to Cyprus.   **Figure E** below, submitted as **Exhibit 6**, is a true and accurate copy of Whois data showing the domain name was changed to "omega3zone Global Ltd" in Cyprus.

**Figure E**

29.     Omega3zone is a Cyprus-based company that was filed on November 15, 2022, and is owned by Mr. Marnitz and Ms. Ioana Vidrasan, **Figure F** below, submitted as **Exhibit 7**, is a true and accurate copy of opencorporates.com incorporation information for omega3zone global ltd.



**Figure F**

### B.  Defendants Used the Stolen Domain to Take Control of IT Infrastructure

30.     After gaining access to CipherBlade PA's Domain, Defendants took control of other CipherBlade PA-controlled IT infrastructure, through various unauthorized administrative changes. Additionally, the billing information of some IT infrastructure had also been transferred away from CipherBlade PA prior to the transfer of the domain away from Mr. Sanders.

31.     Starting on June 14, 2023, and much more substantially on June 16, 2023, the Defendants locked CipherBlade PA contractors, who did not support their actions, from tools and platforms to which they needed access. *See* **Figure H**, submitted as **Exhibit 8**, which is an accurate representation of application notifications triggered by the removal of CipherBlade staff access to the various vaults that provided password logins for several CipherBlade PA accounts**.** *See also*

**Figure I**, submitted as **Exhibit 9**, which is an accurate representation of Defendants revoking a contractor's Google Account access, which removed the contractor's access to their Email address with Google Workspaces.



**Figure H**



**Figure I**

32.     Defendants have control and locked CipherBlade PA out of many key backend systems, for which Cipherblade PA paid for, making it impossible for CipherBlade PA to function, including Google Workspace (email access), hosting of the cipherblade.com domain, the backend of the cipherblade.com website, Filevine, Openphone, Lawmatics, Freshdesk, Zoom, 1Password shared vaults, multiple social media accounts, and DocuSign.

10

### C.  Misrepresentations to Contractors/Clients

33.      Defendants have used the stolen domain and website to make false statements about their services, by passing off Richard Sanders' and my experience as their own.

34.      The website falsely claims that Defendants have recovered millions of dollars of stolen cryptocurrency and have investigated and tracked Bitcoin belonging to suspects in hundreds of cybercrime cases. Those are the experiences of CipherBlade PA.

35.      The website claims the Defendants have served as expert witnesses on major cases. That is the experience of Mr. Sanders and myself, not the Defendants, who to the best of my knowledge have never acted as an expert witness at all.

36.      The website lists various law firms as references that are in fact the references of Plaintiff CipherBlade PA, specifically Mr. Sanders and me.

37.      The website further contains sections entitled "Our Network" and "In the Press," referencing articles concerning previous work and press appearances from Richard Sanders and myself.

38.      The website includes a blog with numerous blog posts I drafted for the Plaintiff, but Defendants have removed my name and now misleadingly list "CipherBlade" as an author. I never gave the Defendants authorization to use or repurpose my work product, and never had any contract with any of the defendants.

39.      Clients of CipherBlade PA have been confused by Defendants' claim to have the expertise, experience and tools of CipherBlade PA.

40.      Defendants began actively reaching out to CipherBlade PA business partners and are circulating false narratives in an effort to transfer clients to the Alaska Entity. **Figure J,** submitted as **Exhibit 10,** is a true and accurate description of a Defendant email to a client stating

11

"Regrettably, CipherBlade has had to separate from its Pennsylvania unit due to increasingly erratic and unconscionable behavior by representative of the same, including threats of violence and other harm to multiple team members . . ."



**Figure J**

41.     Defendants began sending disparaging, untrue messages to clients about the nature and purpose of the fraudulent restructuring. *See* **Figure K,** submitted as **Exhibit 11,** which is an accurate description of a message to an existing CipherBlade PA client, which is based in New York, from Defendant Sergio Garcia (who used the alias Miguel Alonso Torres) in which he represents that "CipherBlade has had to separate from its Pennsylvania unit, comprising Richard, Paul, and Sasha due to increasingly erratic and unconscionable behavior by representatives of the same . . ."In this message Mr. Garcia solicits this CipherBlade PA client and requests that they contact him or William Jones (an employee of CipherBlade Alaska) for future inquiries by stating "I would ask that you bear this in mind in the future, and contact me for customer referral topics or you can also contact our sales director William Jones."

12



**Figure K**

42.     Defendants began soliciting CipherBlade PA contractors around April 2023 and attempting to get them to transfer their contracts from CipherBlade PA to the Alaska Entity. **Figure L,** submitted as **Exhibit 12,** is a true and accurate excerpt from a message from a Defendant, attempting to get a CipherBlade PA contractor to assign his contract over to the Alaska Entity.

13

**Figure L**

43.     Defendants also succeeded in transferring contractors' contracts over to the newly created, fraudulent entity through misrepresentations. Below is a true and accurate copy of an audit trail signed contractor assignment completed through Dropbox Sign which Defendants represented as being signed and executed by Mr. Sanders through the email address richard@cipherblade.com. However, Mr. Sanders was in Ukraine at this time, he never had access to the email and the signing of the document geo-locates to Pittsburgh, Pennsylvania area. Below are **Figures M and N**, submitted as **Exhibit 13 and 14,** which are true and accurate copies of the contract and the corresponding audit trail.

14



**Figure M**

NYACTIVE-22848570.1

**Figure N**

44.     Defendants attempted to use misappropriated funds to pay contractors bonuses in an attempt to get them to transfer to the Alaska Entity, hurting CipherBlade PA's workforce. **Figure O,** submitted as **Exhibit 15,** is a true and accurate excerpt of a chat with a CipherBlade PA contractor where Defendants attempt to give him a discretionary bonus to transfer his contract.

16



**Figure O**

45.     Defendants attempted to capture funds meant for CipherBlade PA. **Figure P** below,

submitted as **Exhibit 16**, is a true and accurate excerpt from a chat in which Mathew (an alias for

Mr. Kriz) makes disparaging comments about Mr. Sanders, while attempting to capture funds

meant for CipherBlade PA as well as transferring existing CipherBlade PA clientele to the Alaska

entity.

17



**Figure P**

46.    Defendants used the inappropriate scheme and fraudulent partnerships to tout aggressive growth to both contractors and clients alike. **Figure Q** below, submitted as **Exhibit 17**, is a true and accurate excerpt from a message from a Defendant internal message platform, Telegram, where Defendants misrepresent the nature of their unlawful scheme of theft as growth.

NYACTIVE-22848570.1

**Justin**                                                    14:23

Let me reassure everyone. The situation is not bad. Things are changing because we are growing aggressively and we have to evolve in order to efficiently support that growth. One of the elements of that growth is creating new business units to align with business functions: civil case litigation and industry partnerships under the AK entity, criminal investigations and compliance with an APAC nexus under the new APAC entity that Jussi is leading, and the future EMEA entity that will lead law enforcement liaison and global incident response, and the PA entity will remain to continue to handle criminal cases and some long term clients. All entities will exist simultaneously and cooperatively and will share resources as they grow to ensure they are all successful.

We are already in talks with Chainalysis to take over their global incident response business and likely even absorb some of their investigators to support this. I am in negotiations with them this week for this huge opportunity and to get their unvetted lead flow. Simultaneously, we are in talks with many LEAs in APAC (led by Jussi) and some other potential regional partners. We are also now accepting a large inflow of leads from MetaMask also. As part of my joining and then bringing Jussi on board, we are leveraging our experience in the industry and at Chainalysis to build these areas of the business, and we have built regional "sister companies" that each of us can build the brand around to run and grow to support as we have both done in the past.

**Figure Q**

47.     Defendants' misrepresentation and fraudulent activities have directly resulted in loss of client engagements. **Figure R**, submitted as **Exhibit 18**, is a true and accurate copy of a message from a client terminating an engagement with CipherBlade PA due to the Defendants misrepresentations and confusion.

19



**Figure R**

48.    Defendants interfered with existing contracts by removing my email access and even offering different prices, having the benefit of CipherBlade PA's confidential trade secret client price and quote data, thereby confusing customers and damaging CipherBlade PA's business and its relationship with its clients. **Figures S** and **T** below, submitted as **Exhibit 19**, is a true and accurate description of messages with a client where the client notes they could not reach me and requests a "contingency at 10% to match other EA from Alaska."

20



**Figure S**



**Figure T**

49.     The Defendants also began accepting payments which clients believed was being

sent to CipherBlade PA. **Figure U**, submitted as **Exhibit 20**, is a true and accurate description of

a July 2023 communication where a client expresses frustration because they paid the wrong

CipherBlade entity, when they intended to contract and pay CipherBlade PA.

21



**Figure U**

50.    Defendants denied requests for refunds for a client who paid the wrong entity.

**Figure V**, submitted as **Exhibit 21**, is a true and accurate copy of a message with a client where they state, "we just paid them 30k and they are refusing a refund how do I justify paying the same company another 20k for another team to do the first teams job."

22



**Figure V**

### D. **Misappropriation of CipherBlade PA Funds**

51.     CipherBlade PA has business bank accounts with Wise, a money services provider that enables its customers to receive and send many different currencies, including USD, GBP, and EUR. **Figure W**, submitted as **Exhibits 22, 23, and 24**, is a true and accurate copy of CipherBlade PA's Wise accounts, which list Pittsburgh PA as the account holder address.

23

| EUR statement | GBP statement | USD statement |
|---|---|---|
| January 1, 2023 [GMT-04:00] | January 1, 2023 [GMT-04:00] | January 1, 2023 [GMT-04:00] |
| Generated on: June 20, 2023 | Generated on: June 20, 2023 | Generated on: June 20, 2023 |
| **Account Holder**<br>CipherBlade LLC<br>7070 FORWARD AVE APT 402<br>Pittsburgh<br>PA<br>15217<br>United States | **Account Holder**<br>CipherBlade LLC<br>7070 FORWARD AVE APT 402<br>Pittsburgh<br>PA<br>15217<br>United States | **Account Holder**<br>CipherBlade LLC<br>7070 FORWARD AVE APT 402<br>Pittsburgh<br>PA<br>15217<br>United States |

**Figure W**

52.    CipherBlade PA does not pay for consulting or advisory services.

53.    Upon review of CipherBlade PA's financials, which I was granted access to on June 16, 2023, I discovered several transactions to what appear to be consulting companies, which were fraudulent companies set up by the Defendants. CipherBlade PA has no records of having any contracts or agreements with any of the companies noted below.

54.    In April 2023, Defendants fraudulently transferred $110,230.09 (USD) and €245,675.91 (EUR) from CipherBlade PA to Inquisita Solutions, a Cyprus-based company owned by Mr Kriz. **Figure X**, submitted as **Exhibit 25**, is a true and accurate copy of opencorporates.com incorporation for Inquisita Solutions Ltd.

24

**Figure X**

55.     In 2022, Defendants fraudulently transferred $119,502.60 to White Orchard Ltd, a Cyprus-based company owned by Mr. Kriz. **Figure Y** submitted as **Exhibit 26**, is a true and accurate copy of opencorporates.com incorporation information for White Orchard Ltd.



**Figure Y**

56.     Defendants misappropriated some of Plaintiffs cryptocurrency assets, which totaled $1,264 USD. **Figure Z**, submitted as **Exhibit 27**, is a true and accurate description of a message wherein I request funds and the control of the wallet be returned to CipherBlade PA, which Mr.

NYACTIVE-22848570.1

Kriz refused.



**Figure Z**

57.     The Defendants also used CipherBlade PA business accounts to pay Green Stone Business Advisory FZ LLC $435,199.59 (USD) in 2022, and $716,342.85 (USD) in 2023. CipherBlade has never engaged the services of this entity.

58.     In 2023, after Mr. Sanders departed for Ukraine, the Defendants also transferred $24,700 USD to the Singapore Entity.

59.     Defendants also used CipherBlade PA's resources to pay for services and software to operate the Alaska Entity. For example, **Figure AA**, submitted as **Exhibit 28**, is a true and accurate excerpt of CipherBlade PA's Accounting, which shows that Plaintiffs paid for Openphone until June 2, 2023. **Figure AB,** submitted as **Exhibit 29**, is a true and accurate excerpt showing that Plaintiffs paid for the cipherblade.com website hosting on May 2, 2023.

| 13 | 6-2-2023 | 6-2-2023 EUROWINGS | | Travel | Mercury | EUROWINGS | $ | 275.12 |
| 14 | 6-2-2023 | 6-2-2023 OPENPHONE | | Services | Mercury | OPENPHONE | $ | 57.61 |
| 15 | 6-2-2023 | 6-2-2023 OPENPHONE | | Services | Mercury | OPENPHONE | $ | 57.64 |
| 16 | 6-1-2023 | 6-1-2023 CipherBlade LLC | invoice 23023 | Payroll | Mercury | 20230601MMQF | $ | 7,864.60 |

**Figure AA**

26



**Figure AB**

60.     Defendants' denial of access by CipherBlade PA to its own information technology infrastructure such as its domain, its email, its website, and its customer relationship management software, such as Lawmatics and Freshdesk, and Defendants false statements attributing the experience, expertise and investigative tools of Rich Sanders, myself and CipherBlade PA as their own has already caused great and irreparable harm to CipherBlade PA in the last several weeks. It has misled customer and customer leads who believe they are still working with and paying CipherBlade PA when they are instead working with Defendants. It also has greatly damaged the reputation of CipherBlade PA with key partners like Chainalysis and with important clients because Defendants have locked CipherBlade PA out of its own systems and means to communicate with clients, as well as access to its own confidential information and trade secrets, causing irreparable harm to, and loss of, client relationships and client matters in that time.

61.     Each additional day CipherBlade PA is locked out of its own systems, denied access to its own proprietary information and each day Defendants make these false statements to customers and in the marketplace irreparably damages CipherBlade PA and threatens the viability of its business.  A temporary restraining order is needed to restore to CipherBlade PA access to its own systems so it may communicate with clients and access its own information to limit confusion among clients and further irreparable harm to client relationships while the Court addresses further relief such as an application for a preliminary injunction.

62.     To the best of my knowledge, I have contact details for all of the Defendants by which they can be contacted on either the Telegram or Signal messaging applications.

NYACTIVE-22848570.1

63.     In addition, to the best of my knowledge, the Defendants can be contacted via email at the addresses below:

a.   Manual Kriz, matthew@cipherblade.com;

b.   Michael Krause, michael@cipherblade.com;

c.   Jorn Henrik Bernhard Janssen, jan@cipherblade.com;

d.   Sergio Garcia, miguel@cipherblade.com;

e.   Justin Maile, justin@cipherblade.com;

f.   Ioana Vidrasan, ioana@cipherblade.com; and

g.   Jussi Aittola, jussi@cipherblade.com.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 20th day of July, 2023, in Coquitlam, Canada.

_____

Paul Sibenik, CEO

28