# EXHIBIT 3

## LIMITED LIABILITY COMPANY AGREEMENT

of

## CipherBlade LLC

*A PENNSYLVANIA LIMITED LIABILITY COMPANY (LLC)*

THIS FIRST AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT of **CipherBlade LLC** a Pennsylvania Limited Liability Company ("the Company"), is entered into and shall be effective as of the **28th of February 2019,** by and among the Members and Managers of the Company executing this Limited Liability Company Agreement ("Agreement"). In consideration of mutual convenience herein contained and for other good and valuable the receipt and sufficiency of which is hereby acknowledged, the Managers and Members executing this Agreement, made pursuant to the Pennsylvania Uniform Limited Liability Company Act, as amended from time to time ("the Act") do hereby agree to the terms and conditions of this Agreement. The Members hereby agree that each Member shall be entitled to rely on the provisions of this Agreement, and that no Member shall be liable to the company or to any Member or Members for any action or refusal to act taken in good faith reliance on the terms of this Agreement. The Members and Managers and the Company do hereby agree that the duties and obligations imposed on the Members of the Company as set forth in this Agreement, which is intended to govern the relationship among the Company, the Members, and the Managers, notwithstanding any provision of any regulatory or common federal or state law to the contrary.

### RECITAL:

The parties to this agreement (the "Members") are entering into this agreement for the purpose of forming a limited liability company that is to be managed by one or more managers (the "Managers") under the Pennsylvania Uniform Limited Liability Company Act.

### AGREEMENTS:

1.  **FORMATION**

    1.1  **Name:**  The name of this limited liability company (the "Company") is:  **Little Prince Equity LLC**

    1.2  **Certificate of Organization:**  The Certificate of Organization for the Company were filed with the Pennsylvania Department of State for the State of Pennsylvania on the **19th of February 2019**.

    1.3  **Duration:** The company will exist until dissolved as provided in this agreement.

    1.4  **Principal Office:**  The Company's principal office will be at such address as the Managers shall designate from time to time.

    1.5  **Designated Office and Agent for Service of Process:** The Company's initial designated office will be at **7070 Forward Avenue, Apt 402, Pittsburgh, PA 15217**, and the name of its Registered Agent for service of process at that address will be Richard Anthony Sanders.

    The Company's designated office and its agent for service of process may only be changed by filing notice of the change with the Pennsylvania Department of State of the state in which the articles of organization of the Company were filed.

    1.6  **Purposes and Powers:** The Company may conduct any and all lawful business deemed appropriate to its objectives.

**1.7** **Title to Assets:** Title to all assets of the Company will be held in the name of the Company. No Member has any right to the assets of the Company or any ownership interest in those assets except indirectly as a result of the Member's ownership of an interest in the Company. No Member has any right to partition any assets of the Company or any right to receive any specific assets upon liquidation of the Company or upon any other distribution from the Company.

**2.** **MEMBERS, CONTRIBUTIONS AND INTERESTS**

**2.1** **Members:** The names and addresses of the Members of the Company and their initial Ownership Interests are:

| Name and address | Ownership Interest |
|---|---|
| Richard Anthony Sanders<br>7070 Forward Ave, Apt 402, Pittsburgh, PA 15217 | 100% |

Each Member's Ownership Interest at any time will be determined by the ratio of the Member's aggregate capital contributions to the aggregate capital contributions of all Members.

**2.2** **Initial Capital Contributions:** The initial capital contributions of the initial members must be paid to the Company, in cash, immediately after all parties have signed this agreement.

**2.3** **Additional Members:** Additional members of the Company may be admitted with the consent of the Managers if the Managers have approved additional capital contributions, the Members have not contributed the maximum amount of such contributions, and the additional members do not contribute any more capital than the difference between the maximum set by the Managers and the amount contributed by the Members. Additional members may also be admitted under the section of this agreement relating to substitution. Otherwise, additional members may not be admitted except with the approval of the Members.

**2.4** **Additional Contributions:** Except as otherwise provided in the Act, no Member is required to contribute additional capital to the Company. Additional capital contributions to the Company may be made by the Members only with the approval of the Managers. If the Managers approve additional capital contributions, the Managers must set a maximum amount of such contributions that will be accepted from the Members. Each Member will then have the right, but not the obligation, to contribute a pro rata share of the maximum based upon the Member's Ownership Interest. If any Member elects to contribute less than the Member's pro rata share of the maximum, the other Members may contribute the difference on a pro rata basis in accordance with their Ownership Interests or on any other basis they may agree upon.

**2.5** **Interest on Capital Contributions:** No interest will be paid on capital contributions.

**2.6** **Capital Accounts:** An individual capital account will be maintained for each Member. A Member's capital account will be credited with all capital contributions made by the Member and with all income and gain (including any income exempt from federal income tax) allocated to the Member. A Member's capital account will be charged with the amount of all distributions made to the Member and with all losses and deductions (including deductions attributable to tax-exempt income) allocated to the Member. Members' capital accounts must be maintained in accordance with the federal income tax accounting principles prescribed in Treasury Regulations §1.704-l (b) (2)(iv).

**2.7** **Outside Activities:** Members may engage in business and investment activities outside the

Company, and neither the Company nor the other Members have any rights to the property, profits, or benefits of such activities. But no Member may enter into any business or investment activity that is competitive with the business of the Company unless the activity was approved in advance by action of the Members.

3. **ALLOCATION OF PROFITS AND LOSSES**

   3.1 **Determination:** The net profit or net loss of the Company for each fiscal year will be determined according to the accounting principles employed in the preparation of the Company's federal income tax information return for that fiscal year. In computing net profit or net loss for purposes of allocation between Members, no special provision will be made for tax-exempt or partially tax-exempt income of the Company, and all items of the Company's income, gain, loss, or deduction required to be separately stated under IRC §703(a)(l) will be included in the net profit or net loss of the Company.

   3.2 **Allocation of Net Profits and Net Losses:** The net profit or net loss of the Company for a fiscal year will be allocated among the Members in proportion to their Ownership Interests.

   3.4 **Allocations Solely for Tax Purposes:** In accordance with IRC §704(c) and the corresponding regulations, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company will be allocated among the Members, solely for income tax purposes, so as to take into account any variation between the adjusted basis of such property for federal income tax purposes in the hands of the Company and the agreed value of such property as set forth in this agreement, or in any document entered into all the time an additional contribution is made lo the Company. Any elections or other decisions relating to the allocations to be made under this section will be made by the Managers. The allocations to be made under this section are solely for purposes of federal, state, and local income taxes and will not affect, or in any way be taken into account in computing, any Member's capital account, allocable share of the net profits and net losses of the Company, or right to distributions.

   3.5 **Prorates:** If a Member has not been a Member during a full fiscal year of the Company, or if a Member's Ownership Interest in the Company changes during a fiscal year, the net profit or net loss for the year will be allocated to the Member based only on the period of time during which the Member was a Member or held a particular Ownership Interest. In determining a Member's share of the net profit or net loss for a fiscal year, the Managers may allocate the net profit or net loss ratably on a daily basis using the Company's usual method of accounting. Alternatively, the Managers may separate the Company's fiscal year into two or more segments and allocate the net profits or net losses for each segment among the persons who were Members, or who held particular Ownership Interests, during each segment based upon their Ownership Interests during that segment.

4. **DISTRIBUTIONS**

   4.1 **Distributions to Pay Taxes.** To enable the Members to pay taxes on income of the Company that is taxable to the Members, the Company must make cash distributions to the Members, during each fiscal year, in an amount equal to the product of (a) the highest aggregate rate of federal, state, and local income and self-employment tax imposed on the Company's income for that fiscal year (taking into account the deductibility of state and local income taxes for federal income tax purposes) allocated to any Member who was a Member for the full fiscal year times (b) the amount of the taxable income of the Company allocated to all Members for that fiscal year. Distributions must be paid at least quarterly during each fiscal year at times that coincide with the Members' payment of estimated taxes, and the amount of each distribution will be based upon the anticipated taxable income of the Company for the fiscal year of the distribution and the anticipated tax rates of Members, as determined at the time the distribution is made. The Company's obligation to make distributions under this section is subject to the restrictions

governing distributions under the Act.

2. **Additional Distributions.** Subject to the restrictions governing distributions under the Act, additional distributions of cash or property may be made from time to time by the Company to the Members, at such times and in such amounts as the Managers determine.

3. **Allocation of Distributions.** All distributions to pay taxes and additional distributions must be made to Members in proportion to their Ownership Interest s.

5. **MANAGERS**

   5.1 **Number and Qualifications.** As provided in the articles of organization of the Company, the Company will be managed by Managers. The number of Managers serving at any given time will be the number elected by the Members, but the number may not be less than one nor more than three. Managers may be entities as well as individuals and need not be Members.

   5.2 **Managers:** The Manager(s) of the Company of the company shall be:

   | Name | Address |
   | --- | --- |
   | Richard Anthony Sanders | 7070 Forward Avenue, Apt 402, Pittsburgh, PA 15217 |

   5.3 **Election and Term:** Managers will be elected at meetings of the Members called for the purpose of electing Managers. The notice of any meeting of the Members at which Managers are elected must state that the purpose, or one of the purposes, of the meeting is the election of Managers. Each Manager, including each of the initials Manager named in this agreement, will serve for a term ending at the next meeting of Members called for the purpose of electing Managers, or until the Manager's earlier death, resignation, or removal.

   5.4 **Resignation and Removal:** A Manager may resign at any time by delivering a written resignation to the Members. The resignation will be effective when received by all Members unless a later effective date is stated in the written resignation. The Members may remove any Manager at any time, with or without cause. But a Manager may be removed by the Members only at a meeting of the Members called for the purpose of removing the Manager, and the notice of the meeting must state that the purpose, or one of the purposes, of the meeting is the removal of a Manager.  The resignation or removal of a Manager who is also a Member will not constitute a withdrawal or ex pulsion of the Manager as a Member of the Company or otherwise affect the Manager's rights as a Member.

   5.5 **Authority:** Subject to the limitations imposed by this agreement or by action of the Managers or the Members, each Manager is an agent of the Company and has authority to bind the Company in the ordinary course of the Company's business. But no Manager has authority to engage in any of the following acts unless the act was approved in advance by action of the Members:

   i. To sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the Company;

   ii. To merge the Company with any other entity;

   iii. To amend the articles of organization of the Company;

   iv. To incur indebtedness by the Company other than in the ordinary course of business;

    v.    To authorize a transaction involving an actual or potential conflict of interest between a Manager or a Member and the Company;

    vi.    To change the nature of the business of the Company; or

    vii.    To commence a voluntary bankruptcy case for the Company.

The Managers may, but are not required to, refer any other matter to a vote of the Members.

**5.6** **Other Agents:** By action of the Managers, other agents may be authorized to act on behalf of the Company. The authority given such agents may be general or may be limited to specific matters.

**5.7** **Powers of Members:** No Member who is acting solely in his or her capacity as a Member is authorized to act on behalf of the Company.

**5.8** **Devotion of Time; Outside Activities:** Each of the Managers must devote so much time and attention to the business of the Company as the Managers agree is appropriate. Managers may engage in business and investment activities outside the Company, and neither the Company nor the Members have any rights to the property, profits, or benefits of such activities. But no Manager may enter into any business or investment activity that is competitive with the business of the Company unless the activity was approved in advance by action of the Members. No Manager may use any property or assets of the Company other than for the operation of the Company's business. For this purpose, the property and assets of the Company include, without limitation, information developed for the Company, opportunities offered to the Company, and other information or opportunities entrusted to a Manager as a result of being a Manager of the Company.

**5.9** **Compensation and Reimbursement.** The Managers will be paid such salaries and other compensation as may be fixed from time to time by action of the Members. The fact that a Manager is also a Member will not prevent the Manager from receiving a salary or other compensation from the Company. Managers are also entitled to reimbursement from the Company for reasonable expenses incurred on behalf of the Company, including expenses incurred in the formation, dissolution, and liquidation of the Company.

**5.10** **Meetings of Managers:** If there is more than one Manager serving, meetings of the Managers may be called by any Manager. Meetings of the Managers will be held at the principal office of the Company, unless another place is fixed by action of the Managers. Notice of the date, time, and place of all meetings must be given to each Manager at least 24 hours prior to the meeting. The notice may be oral or written. Oral notice will be effective when given. Written notice will be effective at the earliest of the following times: (a) when received by the Manager, (b) when sent by facsimile or other form of electronic communication reasonably expected to be received immediately at the Manager's place of business, or (c) three days after mailing. A majority of Managers constitutes a quorum for any meeting of the Managers. Each Manager is entitled to one vote, and a matter submitted to a vote at a meeting of the Managers will be approved if a majority of the Managers voting on the matter vote in favor of the matter.

**6.** **MEMBER MEETINGS**

**6.1** **Meetings:** A meeting of Members may be called by the Managers or by Members holding at least 10 percent of the Ownership Interests. If a meeting is called by Members, the Members must deliver a written demand for a meeting addressed to the Managers at the Company's principal office, and the written demand must state the purpose for which the meeting is to be held. Meetings of the Members will be held at the principal office of the Company, or at another place within 25 miles of the principal office that is fixed by action of the Managers and is set forth in the notice of the meeting.

**6.2**   **Notice of Meetings:** Notice of the date, time, and place of all meetings must be given to each Member in writing not earlier than 60 days nor less than 10 days before the meeting date. The notice must be mailed to each Member at the Member's address as shown on the Company's records and must include a description of the purpose or purposes for which the meeting is called.

**6.3**   **Record Date:** The Members who are entitled to notice of a meeting of Members and to vote at the meeting, and their respective Ownership Interests, will be determined as of the record date for the meeting. The record date may be selected by the Managers and may not be more than 70 days nor less than 10 days before the meeting. If the Managers do not select a record date for a meeting of Members, the record date will be the date on which the initial notice of the meeting was mailed to the Members.

**6.4**   **Quorum and Voting:** A Member may be represented at a meeting of Members, and may vote, in person or by written proxy. The presence at a meeting of Members, in person or by proxy, of Members holding more than 50 percent of the Ownership Interests constitutes a quorum. Each Member is entitled to vote the Member's Ownership Interest. Except as otherwise provided in the articles of organization, this agreement, or the Act, a matter submitted to a vote at a meeting of the Members will be approved if a majority of the Ownership Interests voted on the matter are voted in favor of the matter.

**6.5**   **Self Interest:** A Member does not violate any duty or obligation to the Company merely as a result of engaging in conduct that furthers the interest of the Member. A Member may lend money or transact other business with the Company, and, in this case, the rights and obligations of the Member will be the same as those of a person who is not a Member, so long as the loan or other transaction has been approved or ratified by the Managers, or has been approved or ratified by the Members if the loan or other transaction involves a Manager. Unless otherwise provided by applicable law, a Member with a financial interest in the outcome of a particular action is nevertheless entitled to vote on such action.

**7.   ACTION BY MANAGERS OR MEMBERS**

**7.1**   **Meetings Without Notice:** Notwithstanding any other provision of this agreement, if all of the Managers or all of the Members hold a meeting at any time or place and no Manager or Member objects to the lack of notice, the meeting will be valid even if there was no notice or the notice given was insufficient, and any action taken at the meeting will be the action of the Managers or Members, as the case may be.

**7.2**   **Actions Without Meeting:** Any action required or permitted to be taken by the Managers or by the Members at a meeting may be taken without a meeting if a written consent setting forth the action taken is signed by all of the Managers or Members, as the case may be. All written consents of the Managers and Members must be retained as part of the Company's records of meetings.

**7.3**   **Meetings by Telephone:** Meetings of the Managers or Members may be held by conference telephone or by any other means of communication by which all participants can hear each other simultaneously during the meeting. If a Manager or Member participates in a meeting by conference telephone or by other means authorized by this section, the Manager or Member will be considered to be present at the meeting in person.

**8.   ACCOUNTING AND RECORDS**

**8.1**   **Books of Account:** The Managers must keep such books and records relating to the operation of the Company as are appropriate and adequate for the Company's business and for the carrying out

of this agreement. At a minimum, the following must be maintained at the principal office of the Company: (a) financial statements for the three most recent fiscal years; (b) federal, state, and local income tax returns for the three most recent fiscal years; (c) a register showing the current names and addresses of the Members; (d) a copy of the Company's articles of organization and any amendments thereto; (e) this agreement and any amendments thereto; (f) minutes of any meetings of Managers or Members; and (g) consents to action by Managers or Members. Each Member will have access to all such books and records at all times.

**8.2** **Fiscal Year:** The fiscal year of the Company will be the the anniversary month of the LLC's creation.

**8.3** **Accounting Reports:** Within 60 days after the close of each fiscal year, Company must deliver to each Member an unaudited report of the activities of the Company for the preceding fiscal year, including a copy of a balance sheet of the Company as of the end of the year and a profit and loss statement for the year.

**8.4** **Tax Returns.** The Company must prepare and file all required federal, state, and local income tax and other tax returns on a timely basis. Within 60 days after the end of each fiscal year, the Company must deliver to each Member a Schedule K-1, showing the amounts of any distributions, contributions, income, gain, loss, deductions, or credits allocated to the Member during the fiscal year.

**8.5** **Tax Matters Partner.** Anytime the Company has more than 10 Members, any Member is an entity other than an estate or a Company, or any Member is a nonresident alien individual, the Managers must designate one of the Members as the tax matters partner of the Company in accordance with IRC §623 I(a)(7) and keep such designation in effect at all times. In making this designation, preference must be given to Members who are also Managers.

## 9. DISSOCIATION AND DISSOLUTION

**9.1** **Withdrawal.** A Member may not withdraw from the Company.

**9.2** **Events of Dissolution.** Except as otherwise provided in this agreement, the Company will dissolve upon the earliest of: (a) the death, incompetence, expulsion, bankruptcy, or dissolution of any Member; (b) approval of a dissolution of the Company by action of the Members; or (c) at such time as the Company has no Members.

**9.3** **Effect of Member's Dissociation.** Within 120 days of the death, incompetence, expulsion, bankruptcy, or dissolution of a Member, the other Members (whether one or more) may elect to continue the Company by themselves or with others, and to cause the Company to purchase the interest of the dissociating Member pursuant to the provisions of the sections of this agreement relating to purchase price and payment for member's interest. Making the election is in the sole discretion of the other Members and requires the consent of other Members holding a majority of the Ownership Interests held by the other Members. Notice of the election must be given in writing to the dissociating Member or the dissociating Member's successor in interest promptly after the election is made. If the other Members do not so elect, the Company will be dissolved.

**9.4** **Purchase Price.** If the other Members elect to cause the Company to purchase the interest of a dissociating Member under the section of this agreement relating to effect of member's dissociation, the purchase price of the dissociating Member's interest in the Company will be determined by agreement between the Managers and the dissociating Member. If an agreement on the purchase price is not reached within 30 days following the election to purchase the interest of the dissociating Member, the interest must be valued by a third-party appraiser selected by the Managers who is reasonably acceptable to the dis sociating Member, and the purchase price will be the value determined in that appraisal. In appraising the interest to be purchased, the appraiser

must determine the fair market value of the interest as of the date of the event of dissociation. In determining the value, the appraiser must consider the greater of the liquidation value of the Company or the value of the Company based upon sale of the entire Company as a going concern. The appraiser must also consider appropriate minority interest, lack of marketability, and other discounts. If the appraisal is not completed within 120 days following the election to purchase the interest of the dissociating Member, either the Managers or the dissociating Member may apply to a court of competent jurisdiction for the appointment of another appraiser, in which case the court-appointed appraiser must appraise the interest of the dissociating Member in accordance with the standards set forth in this section, and the purchase price will be the value determined in that appraisal.

**9.5** **Payment for Member's Interest:** The purchase price for the interest of a Member purchased under the section of this agreement relating to effect of member's dissociation will be paid as follows:

  i. The purchase price will bear interest from the date of the election of the other Members to purchase the dissociating Member's interest at the prime rate of interest in effect on the date of the election as quoted in The Wall Street Journal or, if that publication is not available, another reputable national publication selected by the Managers that is reasonably acceptable to the dissociating Member.

  ii. The purchase price will be payable in accordance with the terms of a promissory note of the Company providing for the payment of the principal amount in 60 equal monthly installments, including interest on the unpaid balance, with the first installment to be due one month after the date of closing and an additional installment to be due on the same day of each month thereafter until the promissory note is paid in full. The promissory note will bear interest from the date of the closing at the rate specified above. The promissory note must provide that if any installment is not paid when due, the holder may declare the entire remaining balance, together with all accrued interest, immediately due and payable. Partial or complete prepayment of the remaining balance due under the promissory note will be permitted at any time without penalty, provided that any partial prepayment will not affect the amount or regularity of payments coming due thereafter.

  iii. The purchase must be closed within 30 days following the determination of the purchase price. At the closing, the dissociating Member must sign and deliver to the Company a written assignment transferring the entire interest of the dissociating Member in the Company to the Company free and clear of all encumbrances. Such assignment must contain warranties of title and good right to transfer. At the closing, the Company must pay the accrued interest on the purchase price then due to the dissociating Member, and the Company must also deliver its promissory note to the dissociating Member. Each of the other Members must sign and deliver to the dissociating Member a security agreement granting a security interest to the dissociating

  iv. Member in that percentage of the interest of each of the other Members in the Company equal to the Ownership Interest of the dissociating Member being purchased by the Company. The security agreement must be in a form reasonably acceptable to the attorney for the dissociating Member and will secure payment of the promissory note by the Company. The security agreement must provide that if there is a default in the payment of the promissory note by the Company and the security interest is foreclosed or the interest in the Company is retained by the secured party in satisfaction of the indebtedness, the interest may be transferred without the necessity of tendering the interest to the Company under the section of this agreement relating to tender of interest and the person acquiring the interest in the Company will be admitted as a member of the Company without further consent of the Members being required.

> *As an example of the operation of this provision, if the Ownership Interest of a dissociating Member was 25% and there are three other Members, each with an Ownership interest of 33-1/3% after the purchase of the dissociating Member's Ownership Interest by the Company, each of the other Members would be required to grant the dissociating Member a security interest in an Ownership interest of 8- l/ 3%.*

**9.6  Effect of Purchase of Member's Interest:** A dissociating Member will cease to be a Member upon the election of the other Members to cause the Company to purchase the dissociating Member's interest pursuant to the section of this agreement relating to effect of member's dissociation. Thereafter, the dissociating Member will have no rights as a Member in the Company, except the right to have the dissociating Member's interest purchased in accordance with the terms of this agreement

**9.7  Successor in Interest:** For purposes of this section relating to dissociation and dissolution, the term "dissociating Member" includes the dissociating Member's successor in interest.

**10.  WINDING UP AND LIQUIDATION**

**10.1  Liquidation Upon Dissolution:** Upon the dissolution of the Company, the Managers must wind up the affairs of the Company unless the dissolution results from the dissociation of a Member and the other Members elect to continue the Company under the provisions of this agreement relating to effect of member's dissociation. If the affairs of the Company are wound up, a full account must be taken of the assets and liabilities of the Company, and the assets of the Company must be promptly liquidated. Following liquidation of the assets of the Company, the proceeds thereof must be applied and distributed in the following order of priority:

To creditors of the Company in satisfaction of liabilities and obligations of the Company, including, to the extent permitted by law, liabilities and obligations owed to Members as creditors (except liabilities for unpaid distributions);

To any reserves set up for contingent or unliquidated liabilities or obligations of the Company deemed reasonably necessary by the Managers, which reserves may be paid over to an escrow agent by the Managers to be held by such escrow agent for disbursement in satisfaction of the liabilities and obligations of the Company, with any excess being distributed to the Members as provided below; and

To Members in proportion to the positive balances of their capital accounts, after taking into account all adjustments made to capital accounts for the fiscal year during which the distributions to Members are made.

**10.2  Distribution of Property in Kind:** With approval of the Members, property of the Company may be distributed in kind in the process of winding up and liquidation. Any property distributed in kind will be valued and treated for the Company's accounting purposes, in accordance with Treasury Regulations § J.704- l(b)(2)(iv)(e)(l ), as though the property distributed had been sold at fair market value on the date of distribution. If property is distributed in kind, the difference between the fair market value of the property and its adjusted tax basis will, solely for the Company's accounting purposes and to adjust the Members' capital accounts, be treated as a gain or loss on the sale of the property and will be credited or charged to the Members' capital accounts in the manner specified in the section of this agreement relating to capital accounts.

**10.3  Negative Capital Accounts:** If any Member has a negative balance in the Member's capital account upon liquidation of the Company, the Member will have no obligation to make any contribution to the capital of the Company to make up the deficit, and the deficit will not be considered a debt owed to the Company or any other person for any purpose.

11. **TRANSFER OF MEMBERS' INTERESTS**

   11.1 **General Restrictions:** No Member may transfer all or any part of such Member's interest as a member of the Company except as permitted in this agreement. Any purported transfer of an interest or a part of an interest in violation of the terms of this agreement will be null and void and of no effect. For purposes of this section a "transfer" includes a sale, exchange, pledge, or other disposition, voluntarily or by operation of law.

   11.2 **Securities Law Restriction:** Each Member acknowledges that the interest of the Member in the Company has not been registered under the Securities Act of 1933 or applicable state securities laws in reliance upon exemptions from registration and that the resale or other transfer of the interests of Members is restricted by applicable provisions of the Securities Act of 1933 and applicable state securities laws. Each Member agrees that the Member's interest may not be offered for sale, sold, transferred, pledged, or otherwise dis posed of unless the interests of the Members in the Company are registered under the Securities Act of 1933 and applicable state securities laws or unless an exemption from registration is otherwise available. NOT WITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE INTEREST OF A MEMBER IN THE COMPANY MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED, PLEDGED, OR OTHERWISE DISPOSED OF BY A MEMBER IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933 AND APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGERS THAT REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED.

   11.3 **Permitted Transfers:** Subject to the restrict ions contained in the section of this agreement relating to securities la w restrictions, a Member may transfer all or a part of the Member's interest in the Company with the prior written consent of all other Members. If the other Members do not consent to a particular transfer and if the transfer does not violate the securities law restriction, the Member may transfer all or a part of the Member's interest if such interest or part has been tendered for sale to the Company in accordance with the section of this agreement relating to tender of int e rest, the tender has not been accepted within the time limit set forth in that section, the transfer is made to the transferee named in the notice of tender within 180 days after the notice of tender is effective, and the transfer is at a price and upon terms no more favorable to the transferee than those set forth in the notice of tender.

   11.4 **Tender of Interest:** If a Member wishes to transfer all or part of the Member's interest in the Company and the other Members do not consent, the interest or the part of an interest to be transferred must be tendered to the Company by giving written notice of such tender to the Company. Such notice must contain the name and address of the proposed transferee, the price to be paid by the proposed transferee for the interest, if any, and the terms of the proposed transfer. If a Member's interest is transferred by operation of law, the successor in interest to the transferring Member may give the required notice of tender to the other Members at any time following the transfer, and such successor in interest will be deemed to have given the notice of tender at the time any other Member gives notice to the successor in interest and to all other Members of the failure to give the notice of tender. Within 30 days after a notice of tender is given, the other Members may accept the tender on behalf of the Company and have the Company purchase the interest tendered for the lesser of the price set forth in the notice of tender (if the proposed transfer is to be by sale) or the price applicable to the purchase of a Member's interest pursuant to the section of this agreement relating to the effect of member's dissociation. The tender must be accepted on behalf of the Company by giving written notice of acceptance to the transferring Member or the transferring Member's successor in interest. The purchase may, at the option of the other Members, be on the terms set forth in the notice of tender, if any, or the

terms set forth in the section of this agreement relating to payment for member's interest. For purposes of those provisions, the date of the acceptance of the tender will be deemed to be the date on which the other Members elected to purchase the interest of the dissociating Member.

**11.5  Effect of Tender:** The Member tendering the interest will cease to be a Member with respect to the tendered interest upon an acceptance of the tender by the Company. Thereafter, the Member tendering the interest will have no rights as a Member in the Company, except the right to have the tendered interest purchased in accordance with the terms of this agreement.

**11.6  Substitution:** If the interest of a Member is transferred, with the consent of the other Members or after the interest has been tendered for sale to the Company in accordance with the section of this agreement relating to tender of interest, the transferee of the interest will be admitted as a Member of the Company effective upon the execution by the transferee and delivery to the Company of a written agreement to be bound by all of the terms and provisions of this agreement. If a Member who is the only member of the Company assigns the Member's entire interest, the transferee will be admitted as a Member of the Company effective upon the transfer. If the transferee is not admitted as a Member, the transferee will only have the right to receive, to the extent assigned, the distributions from the Company to which the transferor would be entitled. The transferee will not have the right to exercise the rights of a Member, including, without limitation, the right to vote or inspect or obtain records of the Company.

**12.  REPRESENTATIONS AND WARRANTIES OF MEMBERS**

Each Member represents and warrants to the Company and the other Members that such Member has acquired an interest in the Company for such Member's own account for investment and not with a view to distribution of the interest.

**13.  INDEMNIFICATION AND LIABILITY LIMITATION**

**13.1  Indemnification:** Except as otherwise provided in this section, the Company must indemnify each of the Managers to the fullest extent permissible under the law of the state in which the Company is organized, as the same exists or may hereafter be amended, against all liability, loss, and costs (including, without limitation, attorneys' fees) incurred or suffered by the Manager by reason of or arising from the fact that the Manager is or was a manage r of the Company, or is or was serving at the request of the Company as a manager, member, director, officer, partner, trustee, employee, or agent of another foreign or domestic limited liability company, corporation, partnership, joint venture, trust, benefit plan, or other enterprise. The Company may, by action of the Managers, provide indemnification to employees and agents of the Company who are not Managers. The indemnification provided in this section is not exclusive of any other rights to which any person may be entitled under any statute, agreement, resolution of Managers or Members, contract, or otherwise. But despite any other provision of this agreement, the Company has no obligation to indemnify a Manager for:

    i. Any breach of the Manager's duty of loyalty to the Company;

    ii. Acts or omissions not in good faith that involve intentional misconduct or a knowing violation of law;

    iii. Any unlawful distribution under the Act; or

    iv. Any transaction in which the Manager derives improper personal benefit.

**13.2  Limitation of Liability:** No Manager of the Company is liable to the Company or to the Members for monetary damages resulting from the Manager's conduct as a Manager except to the extent that the Act, as it now exists or may be amended in the future, prohibits the elimination or limitation of liability of managers of limited liability companies. No repeal or amendment of this

section or of the Act will adversely affect any right or protection of a Manager for actions or omissions prior to the repeal or amendment.

**14. MISCELLANEOUS PROVISIONS**

    **14.1 Amendment:** The Members may amend or repeal all or part of this agreement by action of the Members, provided that such action is memorialized in writing. This agreement may not be amended or repealed by oral agreement of the Members or by oral or written agreement of the Managers.

    **14.2 Binding Effect:** The provisions of this agreement will be binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the Members. But this section may not be construed as a modification of any restriction on transfer set forth in this agreement.

    **14.3 Notice:** Except as otherwise provided in other sections of this agreement, any notice or other communication required or permitted to be given under this agreement must be in writing and must be mailed by certified mail, return receipt requested, with postage prepaid. Notices addressed to a Member must be addressed to the Member's address listed in the section of this agreement relating to initial members, or if there is no such address listed for a Member, the address of the Member shown on the records of the Company. Not ices addressed to the Company or a Manager must be addressed to the principal office of the Company. The address of a Member, the Company, or a Manager to which notices or other communications are to be mailed may be changed from time to time by the Member's, the Company's, or the Manager's giving written notice to the Members, the Company, and the Managers. All notices and other communications will be deemed to be given at the expiration of three days after the date of mailing.

    **14.4 Litigation Expense:** If any legal proceeding is commenced for the purpose of interpreting or enforcing any provision of this agreement, including any proceeding in the United States Bankruptcy Court, the prevailing party in such proceeding will be entitled to recover a reasonable attorney's fee in such proceeding, or any appeal thereof, to be set by the court without the necessity of hearing testimony or receiving evidence, in addition to the costs and disbursements allowed by la w.

    **14.5 Additional Documents:** Each Member must execute such additional documents and take such actions as are reasonably requested by the Managers in order to complete or confirm the transactions contemplated by this agreement.

    **14.6 Counterparts:** This agreement may be executed in two or more counterparts, which together will constitute one agreement.

    **14.7 Governing Law:** This agreement will be governed by the law of the state in which the articles of organization of the Company have been filed.

    **14.8 Severability:** If any provision of this agreement is invalid or unenforceable, this will not affect the remaining provisions.

    **14.9 Third-Party Beneficiaries:** The provisions of this agreement are intended solely for the benefit of the Members and Managers and create no rights or obligations enforceable by any third party, including creditors of the Company, except as otherwise provided by applicable law.

    **15.10 Authority:** Each individual executing this agreement on behalf of a company or other entity warrants that he or she is authorized to do so and that this agreement will constitute the legally binding obligation of the company or other entity that the individual represents.

IN WITNESS WHEREOF, we being all of the Managers and Members of **Little Prince Equity LLC**, a Pennsylvania limited liability company, have executed this Agreement, effective as of the date written above.

Member and Manager

_____
Richard Anthony Sanders