Michael G. Scavelli
+1 212 378-7538 direct
mscavelli@steptoe.com



1114 Avenue of the Americas
New York, NY  10036-7703
212 506 3900 main
www.steptoe.com

July 25, 2023

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      **Re:**    *CipherBlade, LLC, a Pennsylvania Ltd. Liab. Corp. v. CipherBlade, LLC, an Alaska Ltd. Liab. Corp, et al.,* **No. 23-cv-05671 (AKH)**

Dear Judge Hellerstein:

    We write on behalf of Defendants CipherBlade, LLC, an Alaska Limited Liability Company ("CipherBlade AK"), and Justin Maile, CipherBlade AK's CEO (together, "Defendants"). The undersigned firm was retained yesterday and has been working diligently with our clients to investigate and assess Plaintiff's (or "CipherBlade PA") numerous requests for relief.  We write in advance of tomorrow's hearing to briefly address Defendants' initial concerns about Plaintiff's application for injunctive relief (ECF No. 8). We will, of course, be prepared to speak further on each of these issues and the remainder of Plaintiff's requests at the hearing scheduled for tomorrow morning (ECF No. 15).  And we are prepared to file additional briefing on these issues, if it would be helpful to the Court.

    As a threshold matter, this Court lacks personal jurisdiction over each of the Defendants.[1] *See Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) ("Where a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.").  Plaintiff's only argument that this Court has personal jurisdiction over Defendants is premised on allegations that they engaged in "tortious conduct in this District [that] caused injury to CipherBlade PA's important business partnerships and customer relations with entities in this

---

[1] Defendants makes a special/limited appearance in this proceeding without waiver to arguments concerning this Court's jurisdiction over each Defendant.



The Honorable Alvin K. Hellerstein
Page 2 of 3
July 25, 2023

District." ECF No. 7 ("Amended Complaint") ¶ 21.  Under New York's long-arm statute, for personal jurisdiction to attach to a non-domiciliary, the tortious act must occur within the state.  *See* CPLR § 302(a)(2).  But there is no allegation that any Defendant—the CipherBlade AK and Mr. Maile, in particular—was in New York state when any of the alleged acts occurred. *See Zaveri v. Condor Petroleum Corp.*, No. 08-CV-6554T, 2009 WL 2461092, at *4 (W.D.N.Y. Aug. 10, 2009) ("The situs of a non-physical commercial injury is where the critical events associated with the dispute took place. Accordingly, in cases alleging a non-physical, commercial injury, for purposes of long-arm jurisdiction, the injury occurs at the location of the original events that caused the injury, not the location where the resultant damages are felt by the plaintiff.") (internal citations and punctuation omitted).

Under CPLR § 302(a)(3), tortious acts that occur without the state may give rise to jurisdiction only if they cause an injury to person or property within the state and the non-domiciliary regularly conducts business in the state, or should reasonably expect the act to have consequences in New York.  However, there are no such allegations in the Amended Complaint.  Rather, the Amended Complaint alleges that the acts injured Plaintiff —a Pennsylvania entity—and not a person or property in New York.  Moreover, it is well-settled that Plaintiff's own commercial activities in New York cannot support an exercise of personal jurisdiction over Defendants.  *See Zaveri*, 2009 WL 2461092 at *3 ("Although the plaintiffs themselves may have engaged in substantial activity within the state of New York in an effort to obtain investment funds for its investments with Condor, the plaintiffs' activities cannot be attributed to the defendant for the purpose of establishing personal jurisdiction over the defendant.").

Even if jurisdication were present, Plaintiff has not and cannot meet its burden of demonstrating a likelihood of irreparable harm that would justify imposition of a temporary restraining order or preliminary injunction.  *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015) (a temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.")  Plaintiff primarily argues that preliminary relief is required because the case involves trade secrets where irreparable harm is presumed. *See, eg.*, ECF No. 9 at 15.  But the Second Circuit has expressly rejected this argument.  On similar facts, the court in *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118–19 (2d Cir. 2009) explained that where "a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury."  Here, there is no allegation that CipherBlade AK—or any of the Defendants—are doing anything but using the information to conduct business themselves.  So, there is no credible concern over dissemination or irreparable impairment of value.  *See Synergy Advanced Pharms., Inc. v. CapeBio, LLC*, No. 10 CIV. 1736 (SAS), 2010 WL 2194809, at *5 (S.D.N.Y. June 1, 2010) ("To demonstrate irreparable harm, a plaintiff must show an imminent danger that a defendant is likely to disseminate the protected information.").



The Honorable Alvin K. Hellerstein
Page 3 of 3
July 25, 2023

  Finally, Plaintiff cannot establish a likelihood of success on the merits for numerous reasons, as we will be prepared to discuss with the Court tomorrow.  Nearly all of Plaintiff's theories of liability rely on the incorrect premise that Plaintiff exclusively owned the CipherBlade brand and exclusively developed the allegedly propriety information at issue in the Complaint.  Neither is correct.  Based on our preliminary investigation, the evidence will show that the CipherBlade business concept was initially developed by a United Kingdom company called CipherBlade Ltd.  It was that entity that registered the CipherBlade trademark and registered the CipherBlade domain name.[2]  And it was that entity agreed to a non-exclusive license of its trademark to CipherBlade PA.  CiperBlade Ltd. was free to cancel the license and to otherwise use or license the trademark as it saw fit.  In addition, as the Amended Complaint acknowledges, Cipherblade Ltd. shared IT infrastructure, various business processes and know-how, customer lists, and customer leads with CipherBlade PA that *already existed* when CipherBlade PA was established.  *See id.* ¶ 30 (noting transfer of "contracts, clients, and infastructure" by CipherBlade Ltd).  To the extent Plaintiff is now arguing that the transferred information and data has been misappropriated, those arguments must fail because, at a minimum, CipherBlade PA never had an exclusive, legal right to that information in the first place.

  We thank the Court for its consideration of this matter and are pleased to provide any additional information that the Court may need.

              Respectfully submitted,

              */s/ Michael G. Scavelli*
              Michael G. Scavelli

cc: Counsel of Record

---

[2] Plaintiff erroneously suggests that it owns the domain name.  But, the documents on which it relies reveal that the domain name was registered in July 2018 – around the time that CipherBlade Ltd. was founded.  Amended Complaint ¶ 91, Figure 9.  Plaintiff was not founded until February 2019.  While the registration simply refers to the registrant as "CipherBlade," Plaintiff could not have registered a domain name before it existed.  Moreover, the license agreement Plaintiff would later execute to use the CipherBlade trademark expressly prohibited it from registering the trademark as a domain name.