N7Q1CIPC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CIPHERBLADE, LLC, *a*
     *Pennsylvania Limited Liability*
4    *Corporation, et al.,*

5                  Plaintiffs,

6            v.                              23 Civ. 5671 (AKH)

7    CIPHERBLADE, LLC, *an Alaska*
     *Limited Liability Corporation,*
8    *et al.,*

9                  Defendants.              Conference
     ------------------------------x
10                                          New York, N.Y.
                                            July 26, 2023
11                                          11:22 a.m.

12   Before:

13                  HON. ALVIN K. HELLERSTEIN,

14                                          District Judge

15                         APPEARANCES

16   CROWELL & MORING LLP
          Attorneys for Plaintiffs
17   BY:  JAMES K. STRONSKI, ESQ.
          ALEXANDER J. URBELIS, ESQ.
18        RICHARD J. STELLA III, ESQ.

19   STEPTOE & JOHNSON LLP
          Attorneys for Defendants
20   BY:  MICHAEL G. SCAVELLI, ESQ.
          EVAN GLASSMAN, ESQ.
21        JASON MEADE, ESQ.

22

23

24

25

N7Q1CIPC

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. STRONSKI:  Jim Stronski from Crowell & Moring for |
| 3 | the plaintiff. |
| 4 | THE COURT:  And with you, Mr. Stronski? |
| 5 | MR. STRONSKI:  Good morning, your Honor. |
| 6 | THE COURT:  Mr. Stronski, just announce your |
| 7 | colleagues. |
| 8 | MR. STRONSKI:  Oh.  Alex Urbelis from Crowell & |
| 9 | Moring, and Rich Stella from Crowell & Moring, your Honor, both |
| 10 | for plaintiffs. |
| 11 | MR. SCAVELLI:  Your Honor, good morning.  Michael |
| 12 | Scavelli of Steptoe & Johnson.  With me at table is Jason |
| 13 | Meade, who will be putting in an appearance today, and my |
| 14 | partner Evan Glassman, all from Steptoe. |
| 15 | THE COURT:  Good morning, all. |
| 16 | ALL COUNSEL:  Good morning, your Honor. |
| 17 | THE COURT:  All right.  This is a motion for a |
| 18 | temporary restraining order.  I received a letter from |
| 19 | defendants taking issue with venue and perhaps some other |
| 20 | matters, which I read quickly last night. |
| 21 | How do you want me to proceed, Mr. Stronski? |
| 22 | MR. STRONSKI:  Yes, your Honor.  We saw the letter |
| 23 | last night.  I can address it in any presentation today; in |
| 24 | addition, we'd be happy to put in a supplemental letter today. |
| 25 | THE COURT:  I don't take letter briefs. |

N7Q1CIPC

1          MR. STRONSKI:  Okay.

2          THE COURT:  Mr. Scavelli is going to have to make a

3    motion.  Talk to me now.

4          MR. STRONSKI:  Sure.  That letter makes a couple of

5    points.  One is that there's no personal jurisdiction, no

6    long-arm jurisdiction pleaded in our complaint on any of the

7    claims.  That's not true.  The plaintiff and the defendant

8    entities are, in a significant sense, 21st century virtual

9    organizations, where you have people in the US, people in

10   Canada, people in other places.  There's no address——

11         THE COURT:  So they're everywhere and nowhere.

12         MR. STRONSKI:  Well, they're all everywhere and

13   they're not the same place.  But what's relevant here is that

14   there are torts taking place in this district.  This is an

15   important district in connection with the loss and then

16   investigations and lawsuits and recovery of cryptocurrency.

17   It's obviously a burgeoning area.  And there are law firms that

18   specialize in it that do business with our client in New York.

19   One is actually a reference of our clients and it remains on

20   the website, the Krowne law firm——K-R-O-W-N-E——which is based

21   in Harrison, in this district even, your Honor, and they

22   specialize in this area, and they are a customer.  They've been

23   interfered with.  And there are representations here on the

24   website——false advertising, we plead——with respect to the

25   experience and the capabilities that the defendants have

N7Q1CIPC

1    currently, because what they've done is they've taken control

2    of our website and they've taken, in some cases—not all—our

3    clients' names off of it, but they still portray themselves as

4    experts in providing testimony in cases when I believe they

5    have not done that, and the individuals who have done that are

6    my clients.  And so they're making misrepresentations of that

7    kind to customers, to law firms, to others in this district.

8    So that's a tort in this district.  And—

9            THE COURT:  Those are the allegations.  Tell me where

10   some of these allegations are.

11           MR. STRONSKI:  We have an allegation in the complaint

12   where we allege that they have tortiously interfered with our

13   customers.  And if you look at their website, the Krowne law

14   firm is listed on the website.  That is a customer of my client

15   that they have, they claim to—

16           THE COURT:  Where is that?

17           MR. STRONSKI:  It's in the 25(a) section of the

18   complaint, your Honor.  I hadn't anticipated there would be a

19   personal jurisdiction challenge.  I don't have the complaint

20   with me, your Honor.

21           THE COURT:  There is no challenge.

22           MR. STRONSKI:  Right.  But the point is, your Honor,

23   we have a 25(a) false advertising claim.

24           THE COURT:  I heard you.  I heard you.  I understand.

25   I understand.

N7Q1CIPC

1        MR. STRONSKI:  Yes.

2        THE COURT:  So I think the next step is for the

3   defendants to make a motion.  Mr. Scavelli?

4        MR. SCAVELLI:  Your Honor, that's precisely what we're

5   here to propose.  We think as far as the order of what should

6   happen next, personal jurisdiction is dispositive on all of

7   this, so if your Honor would like to set a schedule, that's

8   certainly what I would like to do.

9        THE COURT:  When do you want to make the motion?

10  Early.

11       MR. SCAVELLI:  Yeah, for sure, your Honor.  We'll work

12  it out with the plaintiff.

13       THE COURT:  August 2.

14       MR. SCAVELLI:  August 2?  Excuse me, your Honor.

15       THE COURT:  August 9 to oppose.

16       MR. SCAVELLI:  That's fine with us, your Honor.  Does

17  your Honor want to set a reply date as well?

18       THE COURT:  14th.  August 14th.

19       MR. SCAVELLI:  Thank you.

20       THE COURT:  August 22 will be the hearing, 10:00.

21       MR. SCAVELLI:  Your Honor, I'm scheduled to be away

22  that week.  Is there any way we could do it the week after?

23       THE COURT:  No.  I'll be away.

24       MR. SCAVELLI:  I'm sorry, your Honor?

25       THE COURT:  I'll be away.

N7Q1CIPC

1          MR. STRONSKI:  We're available on the 22nd, your

2     Honor.

3          MR. SCAVELLI:  Could I impose on your Honor for a date

4     the week after?

5          THE COURT:  Wait, wait, wait.  I can't.  I'll be away.

6          I can hear you August 15, in which case we'll have to

7     change the reply date.

8          I'll leave it on the 14th.  I'll hear you August 15th,

9     10:00.

10          So this is going to be a motion to dismiss on the

11     grounds of lack of jurisdiction and venue——

12          MR. SCAVELLI:  Yes, your Honor.

13          THE COURT:  ——is that right?

14          MR. SCAVELLI:  Yes, your Honor.

15          THE COURT:  If you lose on the jurisdiction, what

16     about the substantive issues?

17          MR. STRONSKI:  Your Honor, may I address that briefly.

18          THE COURT:  No.  I have your papers already.

19          MR. STRONSKI:  Okay.

20          THE COURT:  I'm asking Mr. Scavelli what he wants to

21     do.

22          MR. SCAVELLI:  Your Honor, we think personal

23     jurisdiction will be dispositive here.  If not, we still it

24     think any sort of preliminary relief would be inappropriate.

25     We think there's clear circuit precedent here that this is not

N7Q1CIPC

1    a situation, most significantly, where there will be

2    irreparable harm.

3              THE COURT:  So you want to oppose that.

4              MR. SCAVELLI:  The motion?  Yes, your Honor.

5              THE COURT:  On substantive grounds as well.

6              MR. SCAVELLI:  Correct.  It would be our

7    recommendation, your Honor——and you can see how voluminous this

8    record is.  It would be more efficient for all the parties to

9    start with personal jurisdiction and, based on your Honor's

10   guidance at the hearing, we could proceed to the next stage.

11             THE COURT:  What's the conduct that's ongoing,

12   Mr. Stronski?

13             MR. STRONSKI:  Right.  The problem, your Honor, is

14   counsel's suggestion delays to a point of destroying our

15   business.

16             THE COURT:  Don't worry about delays.  It's not going

17   to be delayed.  What is your ongoing problem?

18             MR. STRONSKI:  We are locked out of our systems.  So

19   you can imagine being a lawyer or being a consultant——

20             THE COURT:  I understand.  I understand.

21             MR. STRONSKI:  Okay.

22             THE COURT:  So it's not fair for that issue to remain

23   open until I close it.

24             MR. STRONSKI:  We think that needs to be addressed

25   today, your Honor.

N7Q1CIPC

```
1         THE COURT:  Why don't we arrange to have that
2   addressed on August 15 as well.  We start with jurisdiction; if
3   there's no jurisdiction, the case is dismissed.  If there is
4   jurisdiction, then I go on to reach the substantive points,
5   which means I think August 9——well, you tell me what date you
6   want to oppose, Mr. Scavelli.
7         MR. SCAVELLI:  Your Honor, I certainly recognize the
8   immediacy with which plaintiff wants relief.  We literally were
9   just retained on Monday, and we have clients who are
10  international.  We expect this is going to take some time.
11        THE COURT:  I'm asking you a question.
12        MR. SCAVELLI:  Yes, your Honor.
13        THE COURT:  What date?
14        MR. SCAVELLI:  Could we have August 9 to oppose?
15        THE COURT:  Is that okay, Mr. Stronski?
16        MR. URBELIS:  Your Honor, this is Alex Urbelis.  If I
17  could address the Court for a moment with respect to the
18  August 15th——
19        THE COURT:  Take your mask off.
20        MR. URBELIS:  Certainly, sir.
21        With respect to the August 15th date, our clients are
22  here and moved for this expedited hearing because they have
23  been locked out entirely of their business since at least
24  June 16, 2023.  They have no clients.  They have no leads.
25  They have no access to their email, no access to their data, no
```

```
1    access to their website.  We think to wait again until
2    August 15th could really be fatal to their business.  We're
3    hoping for at least some expedited relief today, your Honor.
4    If the defendants would like to treat this as a litigation
5    matter and they would like to treat this as a business dispute,
6    a separation dispute, they should really have no problem
7    consenting to the relief that we have proposed in
8    paragraphs 8-11 of the proposed order for the TRO, which grants
9    us back access immediately to our own data.  The really
10   important thing, your Honor, is that there are ——
11             THE COURT:  What do you need?
12             MR. URBELIS:  Specifically, we need access to our
13   emails, the Lawmatics account, and all of the client leads and
14   background data.
15             THE COURT:  Can that be given, Mr. Scavelli?
16             MR. SCAVELLI:  Your Honor, I don't know the answer to
17   that, but I would commit——we would commit that we would work
18   with them.  We actually called opposing counsel yesterday to
19   start this dialogue to see if there is a way that we can
20   amicably share information with them in the meantime, so we
21   will absolutely commit to continuing that conversation.  I
22   can't personally say precisely what we can or cannot give over
23   at this point, but I certainly can assure the Court that we
24   will work expeditiously with the other side to see if there's a
25   way that we can do that.
```

N7Q1CIPC

1      MR. URBELIS:  Your Honor, if I could respond very

2   briefly.

3      THE COURT:  No.

4      MR. URBELIS:  Okay.

5      THE COURT:  I can put this off until Monday, July 31,

6   at 10:00.  It can be worked out by then or not, and if no

7   satisfactory disposition on that issue, I'll change the

8   briefing schedule and compress it.  I take the plaintiff's

9   point that they can't stay in business if presumably they're

10  locked out.  I can tell you, Mr. Stronski and Mr. Urbelis, I

11  did not see, when I read this complaint, a case for irreparable

12  damage if a TRO were not granted.  Maybe I missed it.  The

13  complaint is very long.  It's much too detailed in the wrong

14  places.  And it doesn't let a reader know what it is that you

15  lose.  You have to make that plain, because otherwise I don't

16  think I'll be granting you the relief you request.

17      MR. STRONSKI:  The relief we request, your Honor, is

18  very specific—to have them stop making certain statements on

19  the web page that they're controlling and to give us access to

20  our data, because we've been shut out for a month, and another

21  month will destroy the business.

22      THE COURT:  So those are reasonable points and they're

23  sufficiently specific.  You ought to be able to agree to it.

24      So I'll see you on Monday, July 31, at 10:00.

25      MR. STRONSKI:  Your Honor, there was an additional

N7Q1CIPC

1    request for a preservation order, which I think is not

2    objectionable, that the defendants be ordered to not destroy

3    documents and to keep records related to this.

4            THE COURT:  That's their obligation by law.

5            MR. STRONSKI:  Okay.  Thank you.

6            THE COURT:  I'll see you July 31.

7            MR. URBELIS:  Your Honor, could I make one more

8    observation to the Court here.

9            Insofar as working out something where our client, the

10   plaintiffs, can obtain access to their data and their clients

11   and their leads that would allow them to continue to do

12   business, it's unclear to me, and I think the defendants need

13   to address, who they represent in this particular matter,

14   because if we are to continue to work out with them some kind

15   of agreement——

16           THE COURT:  It's a question of who is the real party

17   in interest?

18           MR. URBELIS:  Not necessarily, your Honor.  I think

19   it's a question of do they represent the right defendants that

20   can give us access back to the data that the other defendants

21   have stolen.  They've essentially performed account takeover.

22           THE COURT:  If you don't receive satisfaction by

23   Monday, you let me know.

24           MR. URBELIS:  Thank you, your Honor.

25           THE COURT:  Now I think it would be helpful if

N7Q1CIPC

```
1    Mr. Stronski or Mr. Urbelis would tell me what the case is
2    about.
3              MR. STRONSKI:  Sure.  The case is about a business
4    where there is a group of people in the business who have
5    started competing businesses and have, from our standpoint,
6    most importantly, taken our records.  So there are customer
7    relationship management software that has all of the data, and
8    our business——what we are is we are consultants to law firms
9    and other entities that are investigating and trying to find
10   stolen cryptocurrency, and so there are matters like a law firm
11   would have with a lot of work product and data, and that has
12   been taken by subterfuge.  It's been taken by——
13             THE COURT:  On matters that you received from the law
14   firms.
15             MR. STRONSKI:  Yes, on matters that we have, our
16   ongoing matters, and then communications, because they've
17   removed our access to the emails; communications to our clients
18   are not getting to our clients, and they're taking those leads
19   for themselves, at least——
20             THE COURT:  Who is "they"?
21             MR. STRONSKI:  It's the companies that have been set
22   up to transfer this business to by defendants, and it's a
23   company called CipherBlade Alaska and CipherBlade Singapore,
24   and then——
25             THE COURT:  Who are the defendants?
```

N7Q1CIPC

1    MR. STRONSKI:  There is an individual, Mr. Kriz, who

2    was retained by our client in 2019.  They retained a Michael

3    Krause, and it's a public record in our complaint that

4    Michael——

5    THE COURT:  They were officers of your company?

6    MR. STRONSKI:  No.  Everybody was a contractor.  They

7    were contractors who worked for our company.

8    THE COURT:  Was there an agreement?

9    MR. STRONSKI:  There were agreements, and the

10   agreements were actually——with the contractors were transferred

11   to the new company is my understanding, with representations

12   from our client, using his web, his email that he didn't

13   consent to.

14   THE COURT:  So there's a paper trail of obligations

15   that has not been set out in the complaint.  If these two

16   gentlemen were independent contractors, they had the right to

17   have other business clients and the like.  Now I assume that

18   they have some kind of claim of right to get this information.

19   I don't know.  But I don't know any of the——

20   MR. STRONSKI:  Right now, your Honor, we're dealing

21   with our right to access the information, and who owns the

22   domain and who owns the trademark will be issues for later.

23   Our injunctive relief, we just need access to the information

24   that we've developed.

25   And you asked who the defendants were.  We put in our

N7Q1CIPC

| | |
|---|---|
| 1 | complaint Michael Krause, who's one of the main defendants; two |
| 2 | of his children, his sons, are defendants.  One of them has a |
| 3 | company in Cyprus that the assets have been transferred to, the |
| 4 | trademark and the domain.  Apparently, Michael Krause was the |
| 5 | managing partner, managing director of an NKD entity, and he |
| 6 | was convicted of embezzlement there. |
| 7 | THE COURT:  Don't get off into too— |
| 8 | MR. STRONSKI:  So that's who we're dealing with.  So |
| 9 | you asked me who they are.  And the case is about —— |
| 10 | THE COURT:  Hold on.  Hold on.  Hold on.  Was there a |
| 11 | contract between you and the independent contractor? |
| 12 | MR. STRONSKI:  Maybe Mr. Urbelis can address that, |
| 13 | your Honor. |
| 14 | MR. URBELIS:  Your Honor, part of the difficulty with |
| 15 | this matter, and the complaint, which you had identified |
| 16 | correctly, I think, is that it is extraordinarily difficult to |
| 17 | identify and find these contracts because the defendants have |
| 18 | locked out the plaintiffs from all of their email access.  So |
| 19 | they can't go into their historical records, they can't go into |
| 20 | their back end files.  They're locked out entirely from all of |
| 21 | their back end systems since at least June 16, 2023. |
| 22 | THE COURT:  All right.  Let me ask defendants a |
| 23 | question.  By what claim of right do you get access to all of |
| 24 | this, do you have exclusive access to all this information? |
| 25 | MR. SCAVELLI:  Your Honor, based on our initial |

N7Q1CIPC

investigation——which, again, has been about 24 hours——it's our

understanding that it is not so clear that any of that

information was actually owned by the plaintiff, the

CipherBlade Pennsylvania.

THE COURT:  That's not my question.  What's your claim

to exclusive right?

MR. SCAVELLI:  The claim to exclusive right is that

the property was owned, had——the folks that now have it have

the exclusive right to that via the fact that a lot of this

information was created in connection with the entity that

preceded CipherBlade Pennsylvania, right?  This business began

with an entity called CipherBlade Ltd., which is a UK entity.

THE COURT:  Yes.  And I understand that the UK entity

is alleged to have transferred its business to the Pennsylvania

entity of similar name.  But that doesn't say how you got it.

If you got it by some kind of an engagement, that doesn't give

you an exclusivity, and what you have obtained is an

exclusivity.  So what claim of right gives you the exclusivity?

MR. SCAVELLI:  Your Honor, I think the best answer I

have at this point for that question, your Honor, is that they

controlled the brand of the——and had the trademark for the

business, and so that if these individuals wanted to continue

to hold themselves out——and by the way, also, the domain name,

right, these individuals wanted to continue to hold themselves

out as——

1          THE COURT:  This domain right, the domain and the

2   trademark and the like, was owned by the UK company.

3          MR. SCAVELLI:  Yes, your Honor.

4          THE COURT:  So you're claiming an exclusive right.

5          MR. SCAVELLI:  Yes, sir.

6          THE COURT:  So the exclusion of the Pennsylvania

7   company, what gives you that exclusive right?

8          MR. SCAVELLI:  Your Honor, at this point I will say——

9          THE COURT:  You don't know.

10          MR. SCAVELLI:  I don't know.  And to be fair, your

11   Honor, I think——and again, why we've reached out to them, if

12   there is information that they are entitled to, we want to give

13   it to them.  But what they are asking for right now is well

14   beyond that.

15          THE COURT:  I'll be very clear.  You come back Monday

16   with the agreement.  Plaintiff has to have an agreement by

17   which it has a right to whatever is owned by the UK company and

18   defendant has to come out, and I want to see your exclusive

19   rights.  It looks to me, on very first blush, Mr. Scavelli,

20   that stuff may have been stolen.

21          MR. SCAVELLI:  Your Honor, again, I have——

22          THE COURT:  If you don't have a document giving you

23   exclusive right and you're excluding someone else, you're in

24   effect stealing property.

25          MR. SCAVELLI:  I understand your point, your Honor.  I

N7Q1CIPC

1    don't know that I agree.  But I do understand your point.

2              THE COURT:  I'm not making a finding——

3              MR. SCAVELLI:  Of course.

4              THE COURT:  —— it's just a quick observation from

5    what's going on.

6              The second quick observation is that there's nothing

7    shown about New York.  It appears to be anywhere in the world.

8    It's a Pennsylvania company against ——

9              MR. STRONSKI:  Your Honor, again, that relates to

10   jurisdiction, perhaps.  There are important customers that have

11   been stolen and interfered with in New York, tortious

12   interference, and Lanham Act claims relating to those

13   customers.

14             Also, the most important partner is based in New

15   York——Chainalysis, your Honor, they're the partner that leases

16   the software, that generates the software, the platform we use.

17   It's the source of most of or a lot of the leads that the

18   plaintiffs get, and so they are New York based.  And that

19   relationship has been interfered with, and we believe the

20   defendants are misrepresenting that they have the same

21   relationship with that entity that we have.  And so it's very

22   much New York based, your Honor.

23             THE COURT:  You're a Pennsylvania company.

24             MR. STRONSKI:  We're a Pennsylvania company that's

25   been injured in New York, your Honor.

N7Q1CIPC

1      THE COURT:  You're not qualified to do business in New

2   York, are you?

3      MR. STRONSKI:  I don't know, your Honor.  I don't

4   think so.  Are we qualified to do business in New York?  Have

5   we filed——

6      MR. URBELIS:  As a d/b/a?  Your Honor, I'm not sure

7   they need to qualify in some way.

8      THE COURT:  I didn't ask you if they need to.  Are

9   they?

10     MR. URBELIS:  We also have bank accounts, financial

11  accounts, that are in New York.

12     THE COURT:  I can tell you this.  In most of these

13  cases, the damage occurs where the company is located.  And

14  you're a Pennsylvania company.

15     MR. URBELIS:  We understand that, your Honor.  To go

16  back to my colleague Mr. Stronski's point here, the tortious

17  interference that we're alleging with respect to New York

18  relates specifically to the major contract, the most critical

19  contract that our clients have.  That's with a company called

20  Chainalysis.  That is headquartered here in Manhattan.  They

21  rely on almost exclusively something called Reactor.

22     THE COURT:  They're not committing a tort against that

23  company; they're committing a tort against you.

24     MR. URBELIS:  That's correct, your Honor.  However,

25  the contract between Chainalysis and CipherBlade, the

N7Q1CIPC

1   defendants tried to misappropriate that contract.  That's

2   causing damage——

3              THE COURT:  I understand.  I think I get a picture of

4   what it is.  A lot of it is going to depend on the contracts.

5              MR. URBELIS:  Yes, your Honor.

6              THE COURT:  Now, Mr. Scavelli, they claim not to have

7   access to the contract.  How do we deal with that issue?

8              MR. SCAVELLI:  Let me speak with my clients, your

9   Honor.  Let me speak with my clients, and in the process of the

10  next week, I will see——I'm not sure it's that simple, candidly,

11  that there's just a contract, but I'm going to check with my

12  clients.

13             THE COURT:  Monday, 10:00.

14             MR. SCAVELLI:  Thank you, your Honor.

15             THE COURT:  Have a good weekend.

16             ALL COUNSEL:  Thank you, your Honor.

17             THE COURT:  I'll remind you, Mr. Scavelli, that if you

18  don't come to some kind of understanding, you're going to have

19  a very constricted schedule to bring your motion on

20  jurisdiction.

21             MR. SCAVELLI:  Thank you, your Honor.  Understood.

22             THE COURT:  One other thing, just as a heads up, if

23  you don't qualify under the federal law, Mr. Stronski, you're

24  faced with jurisdiction of diversity.  The company in

25  Pennsylvania is not a corporation; it's an LLC.  LLCs are

N7Q1CIPC

| | |
|---|---|
| 1 | treated as citizens, where each of their constituent members |
| 2 | are citizens, and if the member is a limited partnership, you |
| 3 | have to go through that as well.  Furthermore, the defendants |
| 4 | are an LLC, and so they have the same jurisdictional issue. |
| 5 | You have to satisfy those jurisdictional requirements, unless |
| 6 | you satisfy the Trade Secrets Act. |
| 7 | MR. STRONSKI:  Right, your Honor.  We believe under |
| 8 | the Lanham Act and Trade Secrets Act we have federal claims. |
| 9 | And on diversity, your Honor, the LLC based in Pennsylvania is |
| 10 | owned by an individual who spends his time between Ukraine and |
| 11 | Pennsylvania, your Honor.  He's not New York based.  And he's |
| 12 | not in any of the jurisdictions where the defendants reside. |
| 13 | THE COURT:  Okay. |
| 14 | MR. STRONSKI:  Thank you. |
| 15 | THE COURT:  It's where he's a citizen, it's not where |
| 16 | he spends his time.  Not where he's domiciled.  It's where he's |
| 17 | a citizen. |
| 18 | MR. STRONSKI:  Right.  Thank you, your Honor. |
| 19 | THE COURT:  See you Monday at 10. |
| 20 | MR. SCAVELLI:  See you Monday, your Honor. |
| 21 | o0o |
| 22 | |
| 23 | |
| 24 | |
| 25 | |