N836CEPC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CIPHERBLADE, LLC
(PENNSYLVANIA),

                    Plaintiff,

            v.                          23 CV 5671(AKH)

CIPHERBLADE, LLC (ALASKA), *et
al.*

                    Defendants.

------------------------------x
                                    New York, N.Y.
                                    August 3, 2023
                                    10:40 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                        District Judge

                        APPEARANCES

CROWELL & MORING LLP
        Attorneys for Plaintiff
BY:  JAMES K. STRONSKI
        ALEXANDER J. URBELIS
        RICHARD J. STELLA

STEPTOE & JOHNSON PLLC
        Attorneys for Defendants
BY:  MICHAEL G. SCAVELLI
        JASON E. MEADE
        EVAN GLASSMAN

N836CEPC

```
1              (Case called)

2              DEPUTY CLERK:  State your appearances, starting with

3     plaintiff counsel.

4              MS. STRONSKI:  James Stronski, Crowell & Moring for

5     CipherBlade LLC — Pennsylvania.

6              MR. URBELIS:  Good morning, your Honor.

7     Alexander Urbelis from Crowell & Moring for CipherBlade LLC —

8     Pennsylvania.

9              MR. STELLA:  Good morning.  Richard Stella for

10    CipherBlade LLC — Pennsylvania.

11             MR. SCAVELLI:  Good morning, Michael Scavelli from

12    Steptoe & Johnson, for defendants.

13             MR. MEADE:  Jason Meade from Steptoe & Johnson, for

14    defendants.

15             MR. GLASSMAN:  And Evan Glassman, your Honor.  Good

16    morning.

17             THE COURT:  Everyone's present and accounted for.

18             If someone will tell me what I just did with my

19    glasses.

20             Okay.  All right.  You had a meeting, and what was the

21    result of that, Mr. Stronski?

22             MS. STRONSKI:  Yes, your Honor.  We had a meeting --

23             THE COURT:  Take your mask off.

24             MS. STRONSKI:  We had a meeting on the TRO relief we

25    were seeking, and we worked hard on it.  And I think we have an
```

N836CEPC

1   agreement in part.  There were two issues, as your Honor will

2   recall.  One is the fact that they were exerting exclusive

3   control over our data in our systems.  And the other was that

4   there was confusion in the marketplace concerning whether or

5   not our expertise and our people were still affiliated with

6   them and/or the work that they had done was the work that the

7   new entity had experience in doing.

8        With respect to the first issue, your Honor, I'm happy

9   to report that at least with respect to addressing the issue of

10  immediate relief — that is the TRO — we have worked out an

11  agreement.  And I could hand it up, which is not a stipulation,

12  but it's basically bullet points in terms of what we understand

13  at least the agreement to be.  I spoke with counsel just now,

14  and they would like to turn it into a stipulation just to make

15  it more clear, but the access issues, we think, are resolved,

16  subject to finalization of the stipulation for submission and

17  so ordering by your Honor.

18       THE COURT:  It doesn't need to be given to me, but if

19  you wish to put it on the record, that's fine.

20       MS. STRONSKI:  We'd like to put the agreement on the

21  record, your Honor, because it's the basis for us

22  withdrawing --

23       THE COURT:  So do the form stipulation.

24       MS. STRONSKI:  Yes, your Honor.

25       THE COURT:  The second point.

N836CEPC

1        MS. STRONSKI:  The second point is access.  We worked

2   hard on that, your Honor, and -- confusion, rather, in the

3   disclosure.  And the thought was --

4        THE COURT:  You have to be more specific.  What's the

5   confusion from?

6        MS. STRONSKI:  The confusion is that the licensing of

7   the trademark has changed from a prior licensee to a new

8   licensee from PA to these new entities that are defendants that

9   are using the mark now.  And it's our position that the

10  business community, the law firms, others that work with these

11  companies are paying them and hiring them and thinking it's

12  them when -- us, when it's really them that's hiring.  We have

13  some instances of actual confusion here that take place --

14       THE COURT:  With the first stipulation, are you

15  allowed -- withdrawn.

16       In the first stipulation, can you market the mark --

17  the new --

18       MS. STRONSKI:  No, your Honor.  So our -- we are --

19  our client is -- our case doesn't involve a trademark claim.

20  It's not a trademark infringement claim.  Our client is moving

21  to a new brand, which is called Crypto Forensics.  So the

22  disclosure that -- we've agreed that to address the TRO --

23       THE COURT:  So you don't care about having to exploit

24  the mark?

25       MS. STRONSKI:  Yes.  Right now, the mark is not

N836CEPC

 1     something in this case that --

 2                 THE COURT:  You just don't want them to use it?

 3                 MS. STRONSKI:  No, your Honor.  We don't want them to

 4     include our clients and our client's work product and our

 5     client's evidence of the work our clients did.  It's very

 6     much -- I mean, these are personal service businesses, like a

 7     law firm, and it is like if the bankruptcy department were to

 8     leave --

 9                 THE COURT:  I need more definition.

10                 MS. STRONSKI:  Sure.

11                 THE COURT:  I don't have a good understanding.  What

12     is it -- I understand what you want to do.  You want to use a

13     new trade name or trademark to market your capability in crypto

14     detection.  The second part is what they can't do.  Now, how

15     are they using material information, trade secrets that they

16     are not supposed to use?

17                 MS. STRONSKI:  Well, they are using trade secret

18     information that -- and using it exclusively to compete with

19     the leads, and that's our trade secret claim.  The Lanham Act

20     claim --

21                 THE COURT:  What is the trade secret?

22                 MS. STRONSKI:  The trade secret is customer

23     information, your Honor.  Any business that the pricing,

24     customer status of the -- you know, if you had a law firm and

25     you had docket management and you had attorney notes in it in

N836CEPC

1    terms of what's been done, what needs to be done, you had work

2    product, those are trade secrets of the law firm.  That's

3    confidential information that has a commercial advantage that

4    you maintain as confidential.  And that's exactly what we has

5    been denied access here to these clients.  And so it -- this is

6    an odd situation.  Often in trade secret cases --

7             THE COURT:  Let me understand.  Your salespeople have

8    gone and accessed different customers, and that information is

9    in the records, and they took the records or had access to the

10   record.  So I want to ask you, this is a service that you

11   provide to sizeable law firms or prominent law firms or even

12   small but successful law firms.  Anybody can pick up a

13   Martindale and know who the potential clients are.  What's the

14   secret?

15            MS. STRONSKI:  It's not the identity of the clients.

16   It's that what they do is they track on the Internet on block

17   chain assets that have been stolen that are crypto assets.

18            THE COURT:  What do the law firms have to do with

19   that?

20            MS. STRONSKI:  Well, these companies act as

21   investigators and expert witnesses in litigations for law

22   firms, and so we have two aspects of our case --

23            THE COURT:  Your company and the defendant's do that?

24            MS. STRONSKI:  Yes.  In fact, our company had done

25   it -- yes.

N836CEPC

1          THE COURT:  So that's the nature of competition.  I

2     don't understand, what is the trade secret.  You still haven't

3     told me.  Customers' names can't be a trade secret in this

4     industry because everybody knows them.  If I want to make a

5     list of law firms in New York City, I could do so.

6          MS. STRONSKI:  Right, your Honor.

7          THE COURT:  Or San Francisco or Chicago or whatever.

8          MS. STRONSKI:  The law firms' files, the law firms'

9     due diligence reports, the work that the law firm does, you can

10    imagine that that is confidential.  It's not public.  And

11    that's what we don't have access to.  It's our customer

12    relationship management programs, which is our dockets and the

13    programs that hold our work product --

14         THE COURT:  And now you will have access.

15         MS. STRONSKI:  Now we will have access.  So we

16    resolved that.  The issue --

17         THE COURT:  The problem is you want to stop the

18    defendants from doing this business.

19         MS. STRONSKI:  Not in this TRO, your Honor.  In this

20    TRO -- the only thing that remains to resolve in the TRO for

21    your Honor now is addressing the confusion in the marketplace

22    with disclosures that in the short term will reduce the amount

23    of confusion.

24         THE COURT:  You want a mandatory injunction, in other

25    words.

N836CEPC

1        MS. STRONSKI:  No.  We would like that the defendants

2   make a disclosure on their website in the contact page, when

3   someone goes to contact them --

4        THE COURT:  That's mandatory disclosure, mandatory

5   injunction.

6        MS. STRONSKI:  It is requiring that they make a

7   disclosure.

8        THE COURT:  I'm not going to give you that until you

9   win at trial.  You go and compete.  Your identity will be

10  known, and your distinctiveness will be known.

11       I'm only going to hear from one lawyer per side.

12       Your distinctiveness will be known, and you're using a

13  different trademark anyway.  I can't see it.

14       MS. STRONSKI:  Your Honor, our Lanham Act claim, we

15  have addressed our access claim, our trade secret claim at

16  least on the TRO relief, so it's the Lanham Act.  It's the

17  confusion.  We have instances of customers who are confused.

18  We cannot --

19       THE COURT:  But it's not going to continue because

20  you're going to have a new trademark.  You're using a new name,

21  so it won't continue.  And what's past it past.  You can sue

22  for damages.  I don't see it.  I don't see it as a TRO.  First,

23  it's a mandatory injunction, and the standards are really high

24  for a mandatory injunction.  And secondly, it's -- it doesn't

25  do anything for the future because you have a different name

N836CEPC

anyhow.  And third, you're not irreparably injured.  You can

sue for damages.  If they used material they should not have

used to gain revenue they shouldn't have gotten, you can

recover it.

MS. STRONSKI:  Your Honor, I understand your -- the

mandatory injunction concern.  The problem here is that on the

Lanham Act, there is confusion presently, and it is appropriate

for an injunction to limit confusion because confusion creates

irreparable harm.  It damages the relationships and --

THE COURT:  Once you have access to your information,

which you got, and once you decide to use a different name to

distinguish yourself, there's no likelihood of confusion in the

future.  Injunctions run into the future.

The motion for TRO is denied.

MS. STRONSKI:  Your Honor, the TRO, if I might add

something, is --

THE COURT:  Subject to the completion of the

stipulation discussed today.

MS. STRONSKI:  Okay.  And, your Honor, the stipulation

may still include a disclosure, which we're discussing with the

defendants.

THE COURT:  Whatever you agree on is all right with

me.

MS. STRONSKI:  Right.  One of the concerns, your

Honor --

N836CEPC

1          THE COURT:  As long as you don't agree to exclude

2     others, then I wouldn't agree.

3          MS. STRONSKI:  I'm sorry, your Honor?

4          THE COURT:  As long as you don't agree to exclude

5     other companies.

6          MS. STRONSKI:  Right.

7          THE COURT:  It's just between the two of you.

8          MS. STRONSKI:  Right, right.

9          THE COURT:  I'll sign whatever you agree to.

10         MS. STRONSKI:  So, your Honor, the stipulation that

11    we've been discussing includes, again, the two points.  We

12    don't agree on the last point yet, but the first point, access,

13    I believe we do.  And the last point is a disclosure to address

14    irreparable harm.

15         Let me just let your Honor know that there are

16    statements being made to our customers that are false and/or

17    misleading, and that is causing the confusion that we wanted to

18    address in this disclosure injunction.  And --

19         THE COURT:  You want them to stop doing something?

20         MS. STRONSKI:  We want them to --

21         THE COURT:  What is it you want them to stop doing?

22         MS. STRONSKI:  We want them to stop saying that

23    CipherBlade separated from the Pennsylvania unit due to

24    increasingly erratic and unconscionable behavior by

25    representatives of the same, including threats of violence and

N836CEPC

1    other harm to multiple team members of other CipherBlade

2    companies.  This is a statement that --

3            THE COURT:  Stop.  What's your position on that,

4    Mr. Scavelli?

5            MR. SCAVELLI:  Your Honor, our position on that is

6    that that is accurate.  And I would read the rest of what

7    Mr. Stronski was reading.

8            The next paragraph says:  If you'd like to reach out

9    to CipherBlade - Pennsylvania and Paul Sibenik, here is his

10   e-mail again.

11           THE COURT:  Say that again.

12           MR. SCAVELLI:  Of course, your Honor.  So just two

13   points.

14           First of all, our client stands by what was said

15   there, and I think the evidence will show that that is

16   accurate.

17           And second of all, the rest of that e-mail, which

18   totally contradicts with what Mr. Stronski is saying, is that

19   it is -- it says -- I'll read it.

20           THE COURT:  Go ahead.

21           MR. SCAVELLI:  As your contact is with CipherBlade LLC

22   in Pennsylvania, and Paul Sibenik, who works by that company's

23   team, and has been working on your case, he should continue to

24   do so.  We can only point you to Paul's private e-mail address

25   as a contact point at this moment.  And they provide

N836CEPC

1    Mr. Sibenik's e-mail address.

2            THE COURT:  Is Paul Sibenik?

3            MR. SCAVELLI:  Sibenik.

4            THE COURT:  Is he now working for you?

5            MS. STRONSKI:  He is, your Honor.  He is.  But the

6    point is, again --

7            THE COURT:  I don't think you can keep saying that.

8    That is unfair competition.  To name-call your competitor and

9    to set it up where the former employee of a competitor is

10   supposed to get business by your advocacy without knowing that

11   business is coming to you.

12           MR. SCAVELLI:  Your Honor, I don't disagree with that,

13   and I expect --

14           THE COURT:  And you should put it in the same

15   stipulation.

16           MR. SCAVELLI:  To be clear, the stipulation also

17   includes a provision where all e-mails that are sent to the

18   CipherBlade e-mails for these individuals are going to be

19   forwarded to their new e-mail address.

20           THE COURT:  The same day?

21           MR. SCAVELLI:  Yes, your Honor.  And I believe it's

22   instantaneous, but close to it.

23           THE COURT:  So with that, do you have the relief

24   you're looking for?

25           MS. STRONSKI:  Yes, your Honor.  If they are

N836CEPC

1     prohibited.  I have another instance where they said the same

2     thing to a lawyer whose offices are at 745 5th Avenue, who is a

3     client.  So, yes, if they've stop doing that, your Honor --

4              THE COURT:  What is that sentence now?

5              MS. STRONSKI:  Again, it is a regret that CipherBlade

6     has had to separate from its Pennsylvania unit comprising

7     Richard Paul and Sasha due to increasingly erratic and

8     unconscionable behavior --

9              THE COURT:  You can't say that either, Mr. Scavelli.

10             MR. SCAVELLI:  Your Honor, fair enough.  I think this

11    was a very heated time, and there were things, just to be fair,

12    that were said to my clients that caused them to say this.  But

13    I don't disagree with your Honor.  We're not going to fight the

14    point.

15             THE COURT:  We're going to stop, then.

16             Now, it is permissible for an employee who leaves one

17    company to become affiliated or employed by a competitor

18    company, to come in touch with the clients he served, and to

19    tell them that he's moved, and to invite them to continue his

20    services.  There's nothing wrong with that.

21             MS. STRONSKI:  Your Honor, also -- and I think they

22    are going to try to fix this, but their website includes many

23    instances of still claiming our client's work product and

24    experiencing clients as their own --

25             MR. SCAVELLI:  Yes.  Mr. Stronski, I'm sorry to

N836CEPC

1      interrupt you.  We absolutely agreed we would do that.

2                  THE COURT:  Do what?

3                  MR. SCAVELLI:  We will remove references to their

4      clients' name on the website.  We have already started to do

5      that, and we agreed to do that a week ago.

6                  THE COURT:  Look, I think your stipulation can cover

7      all this.

8                  MS. STRONSKI:  I think so, your Honor.  If we have --

9                  THE COURT:  I'll give you another date just as a way

10     of keeping on the case, but I think you got it all wrapped up,

11     and start paying attention to the motion to dismiss for lack of

12     personal jurisdiction.

13                 MS. STRONSKI:  Your Honor, one other issue, and I

14     haven't raised this with counsel yet, but they filed last night

15     late a motion to dismiss.

16                 THE COURT:  That's a jurisdictional motion?

17                 MS. STRONSKI:  They did more than that.  They filed a

18     subject matter jurisdiction dismissal on the defendant trade

19     secret, venue dismissal, and other grounds.  So it's more than

20     was contemplated in the expedited motion, and we would ask if

21     we could get another week to respond to it.  We think it will

22     ultimately be denied, and I'd like to address that.

23                 THE COURT:  I'm going to fix a date for you.  Let's do

24     one at a time.  Well, if a motion is coming on, I will see you

25     at the hearing of the motion, so I don't need a new date.  If

N836CEPC

| 1 | Mr. Stronski is aggrieved, he can call my chambers and can get |

1    Mr. Stronski is aggrieved, he can call my chambers and can get

2    fast access to me.

3            All right.  So when do you want to oppose the motion?

4            MS. STRONSKI:  Your Honor, I think when it was only a

5    personal jurisdiction motion, you set it at one week.

6            THE COURT:  The motion is as it is.

7            MS. STRONSKI:  And as it is now, we would like

8    three weeks.

9            THE COURT:  Three weeks, so by August 24.

10           There will be no adjournment of the schedule, so make

11   sure you will be able to live by it.  August 24.

12           MR. SCAVELLI:  No objection from us, your Honor.  And

13   we would request, if we could have two weeks for a reply.

14           THE COURT:  Let me first fix the --

15           MR. SCAVELLI:  Yes, your Honor.

16           MS. STRONSKI:  We can submit our papers on the 24th.

17           THE COURT:  Okay.  And two weeks to reply?

18           MR. SCAVELLI:  If that would be all right, your Honor.

19           THE COURT:  Pardon?

20           MR. SCAVELLI:  If that's okay, yes, your Honor.

21           THE COURT:  I think so.

22           September 7 to reply.  And I'll fix a hearing date

23   when I get the papers.  Okay?

24           MS. STRONSKI:  Thank you, your Honor.

25           MR. SCAVELLI:  Your Honor, can we just -- while we're

N836CEPC

1   all here, just discuss whether or not -- it's our position we

2   should just brief this issue first.

3           THE COURT:  Which issue?

4           MR. SCAVELLI:  The personal jurisdiction issue, the

5   motion that's before the Court.

6           THE COURT:  You made a motion?

7           MR. SCAVELLI:  Yes.

8           THE COURT:  I take the motion.

9           MR. SCAVELLI:  Yes, your Honor.

10          THE COURT:  Do whatever you need to take the motion.

11   I'm not going to hear the same motion again.

12          MR. SCAVELLI:  Of course.

13          THE COURT:  If there's a problem, subject matter

14   jurisdiction, that's the most important thing to do.  I have to

15   deal with that immediately.

16          MR. SCAVELLI:  Your Honor, there remains, I think, two

17   other kind of briefings that need to take place, which is I

18   believe some of the TRO/preliminary injunction motion that they

19   have brought is still live.

20          THE COURT:  What is live?

21          MR. SCAVELLI:  They --

22          THE COURT:  I was going to deny it except as the

23   parties agree in a stipulation.

24          MS. STRONSKI:  Right, your Honor.  We're still, as I

25   understand it, discussing potential resolutions, or at least

N836CEPC

1    planning to discuss resolutions of other issues.  It relates to

2    control of the domain that was stolen, and it's -- you know,

3    and it also -- with respect to -- there's over a million

4    dollars that's been taken out of our accounts in New York.

5    And --

6             THE COURT:  Those are not matters for a TRO.

7             MS. STRONSKI:  Right.  But in terms of provisional

8    remedy, because we have these entities outside the U.S. that we

9    don't know what assets they have here, we'd like to perhaps get

10    restraining orders.  We have to discuss all those --

11             THE COURT:  You're not going to get that in a TRO.

12             MS. STRONSKI:  It would be in a PI, your Honor.

13             THE COURT:  A separate motion.

14             MS. STRONSKI:  Yes, your Honor, okay.

15             THE COURT:  The motion for TRO and for a preliminary

16    injunction is denied, expect to the extent that the parties

17    have agreed -- will agree -- sorry, they have agreed and will

18    continue to agree in the context of a stipulation to be given

19    to me, by when?

20             MS. STRONSKI:  We don't have a date, your Honor.  It

21    would be helpful to have one.

22             THE COURT:  Give me a date.

23             (Counsel confer)

24             MS. STRONSKI:  I think we can do it before Monday, but

25    Monday, given that we have clients outside the country.

N836CEPC

1        THE COURT:  By August 8.  By August 8.

2        MS. STRONSKI:  Okay.

3        THE COURT:  So the motion, plaintiff's motion for a

4   TRO and a preliminary injunction is denied, except to the

5   extent that the parties agree in a stipulation to be tendered

6   to me for a signature no later than August 8, 2023.

7        MS. STRONSKI:  Your Honor, just for the record, it's

8   denied based on the representations that we've come to an

9   agreement, and we're going to submit a stipulation; is that

10  correct?

11       THE COURT:  That's what I said.  Would you like the

12  reporter to reread what I said?

13       MS. STRONSKI:  No.  Okay.

14       THE COURT:  Do you want the reporter to reread it?

15       MS. STRONSKI:  No.  I just didn't hear it properly,

16  I'm sure.  Thank you.

17       MR. SCAVELLI:  Your Honor, may I ask one last

18  question?  With respect to our -- we also intend to file a

19  12(b)(6) motion.  I assume we hold that off until we resolve

20  the jurisdictional side.

21       THE COURT:  I think you should make all motions at one

22  time.  I don't want forever to be dealing with motions.  If you

23  win on the personal jurisdiction or the subject matter

24  jurisdiction, you've won.  And then if you lose, you want to

25  come back with another motion, no.  All motions at the same

N836CEPC

1    time, so that may change the schedule.

2             MR. SCAVELLI:  Well, we have already filed the

3    personal jurisdiction motion, your Honor.  That's the issue.

4    Otherwise, we would have -- you had asked us to file that at

5    first.

6             THE COURT:  I won't entertain another motion.  The

7    rule is to consolidate all motions.  You want to make a

8    12(b)(6), make it.

9             How do you feel about that, Mr. Stronski?  Do you want

10   all the motions at one time, or would you rather take them by

11   jurisdiction first and substance second?

12            MS. STRONSKI:  I have no strong preference, your

13   Honor.

14            MR. SCAVELLI:  Your Honor, it would be our preference

15   to take it in sequence.  We think the 12(b)(6) motion would be

16   a lot of work.

17            THE COURT:  We will do it in sequence.  The motion you

18   have is the motion we'll deal with.  There will be no

19   countermotions.  And we have a schedule.  Opposition is by

20   August 24, reply by September 7.  And then I'll fix a date

21   for -- we'll have a conference for further activities in the

22   case.  There will be no discovery until this is concluded.

23            MS. STRONSKI:  Your Honor, and we have not submitted

24   our opposition yet, but on the personal jurisdiction motion, we

25   might need discovery, but we'll raise that issue at that time.

N836CEPC

1         THE COURT:  You raise the issue.  I have not read

2    Mr. Scavelli's papers, so I don't know what they say.

3         MS. STRONSKI:  Your Honor, just to clarify.  We -- by

4    order to show cause, we sought the scheduling of a PI motion

5    and a TRO.  We've only been dealing with the TRO.  So if we

6    later need on developments --

7         THE COURT:  You can file it again.

8         MS. STRONSKI:  We can file it again.  Thank you.

9         THE COURT:  Make a motion as new facts develop.

10        MS. STRONSKI:  Thank you.

11        THE COURT:  I have to say one thing.  The news these

12   past couple of weeks has disclosed that a large number of

13   lawyers from Stroock & Stroock & Lavan have come to Steptoe,

14   including some lawyers with whom I worked very closely when I

15   was a partner of the firm, particularly Michelle Jacobson and I

16   think Robert Lewin has joined your firm also.  Has he not?

17   There may be others.  We were a close partnership, so there

18   might be others.  It will not affect my handling of this case.

19        I used to enjoy a pension from

20   Stroock & Stroock & Lavan, which sadly is terminating.  So I

21   have no financial interest indirectly as well.

22        And I will record this in a letter that I will send

23   afterwards.  If anyone has an objection, that person can

24   register the objection with the clerk.

25        MS. STRONSKI:  Thank you, your Honor.

N836CEPC

1              MR. SCAVELLI:  Thank you, your Honor.

2              THE COURT:  All right.  We're finished.  Thanks,

3     everyone.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25